[No. 8,055.—In Bank.]

## THE PEOPLE *v.* JOHN P. DUNN, AUDITOR, ETC.

STATE BOARD OF EQUALIZATION—EQUALIZATION OF ENTIRE ASSESSMENT ROLL—ASSESSMENT OF MONEY AND MORTGAGES—CONSTITUTIONAL LAW. Mandamus to the defendant as Auditor of the City and County of San Francisco, requiring him to obey an order of the State Board of Equalization, increasing the entire assessment roll eight per cent, "amounting to the sum of $17,765,025." The answer alleged that the total amount assessed included $9,831,932 in money, and $32,862,269 in mortgages and deeds of trust; and it was claimed that so much of the order as required these assessments to be raised, was in excess of the powers of the Board, and void.

*Held:* Our conclusion from reading the section of the Constitution (§ 9, Art. xiii) as a whole, is, that it neither authorizes an increase of the valuation of money already assessed at its legal value, nor does it prohibit an increase of all other property so as to make it conform to its actual value in money. The order of the Board is to be read as requiring the Auditor to add eight per cent. to the assessed valuation of all "property, except money already assessed at its true and only legal value." The

portion of the order of the State Board which reads, "amounting to the sum of $17,765,025," is mere surplusage, which does not affect the validity of the order.

APPLICATION for writ of *mandamus.*

*A. L. Hart,* Attorney General, for plaintiff.

The State Board of Equalization has power "to increase the entire assessment roll." (*Wells, Fargo & Co.* v. *State Board of Equalization,* 56 Cal. 194.) What may be the effect of the exercise of the power thus conferred is a matter which addresses itself to the framers of the Constitution originally, and afterwards to the people when they adopted it.

*James A. Waymire,* for Defendant.

The State Board has no power to raise or lower the value of the money assessments. (Pol. Code, § 3693.) The value of mortgages is limited by written contract. It may therefore be reduced, but it can not be increased beyond the face value.

McKINSTRY, J.:

On the seventeenth day of September, 1881, the State Board of Equalization made and entered an order increasing the entire assessment roll of the City and County of San Francisco eight per centum, "amounting to the sum of seventeen million seven hundred and sixty-five thousand six hundred and twenty-five dollars." The Board, on the same day, transmitted to the respondent, the Auditor of the City and County of San Francisco, legal and sufficient notice of its action. This proceeding is by *mandamus* to compel the Auditor to obey the order of the State Board of Equalization. Section 9 of Article xiii of the Constitution reads as follows:

"A State Board of Equalization, consisting of one member from each Congressional district in this State, shall be elected by the qualified electors of their respective districts at the general election to be held in the year 1879, whose term of office after those first elected shall be four years, whose duty it shall be to equalize the valuation of the taxable property of the several counties in the State for the purpose of taxation. The Controller of State shall be *ex officio* a mem-

ber of the Board. The Boards of Supervisors of the several counties of the State shall constitute Boards of Equalization for their respective counties, whose duty it shall be to equalize the valuation of the taxable property in the county for the purpose of taxation; provided such State and County Boards of Equalization are hereby authorized and empowered under such rules of notice as the County Boards may prescribe as to the county assessments, and under such rules of notice as the State Board may prescribe as to the action of the State Board, to increase or lower the entire assessment roll, or any assessment contained therein, so as to equalize the assessment of the property contained in said assessment roll, and make the assessment conform to the true value in money of the property contained in said roll."

This Court has held that the proviso in the foregoing section of the Constitution was to be read distributively, *redendo singular singulis*. (*Wells, Fargo & Co.* v. *State Board of Equalization*, 56 Cal. 194.) And that the power of the State Board is to equalize the assessment rolls of the various counties, by comparing the assessment roll of each county with the roll of each and all the others, and thus to make the assessment conform to the *true value in money* of the property contained in the respective rolls. (Id.)

The Board of Equalization, then, have power to increase or lower the entire assessment roll of a county, "so as to equalize the assessment of the property contained in said assessment roll, and make the assessment conform to the true *value in money* of the *property* contained in said roll.

The object which the Constitution seeks to attain, is that the assessments shall be made to accord with the true value in money. The true value of money in money is money. "The value of a dollar is to be determined by ascertaining that it is what it purports to be." (*Porter* v. *R. R. I. & St. L. R. R.*, 76 Ill. 594.) The pleadings herein show that each dollar on the assessment roll is assessed at a dollar. We take notice, as matter of law, that a dollar in money can not be assessed at more than a dollar, and that to assess a dollar in money at more than a dollar *can not* make it conform to its true value in money. When money is assessed at its nominal value, it conforms to its true value, and from the very nature

of the case, the State Board can not change the assessment without making it cease to conform to its true value in money. To hold that the State Board was authorized to add to the valuation of money already assessed to the full value it represents, would be so to construe a provision of the Constitution intended by its terms to produce a certain result, as that it shall bring about a result directly the contrary to that intended. Money is "property" subject to taxation. (Constitution, art. xii, § 11.) But it is property, the legally declared value of which is the standard by which all other property is to be estimated and assessed. Neither the State nor County Boards of Equalization are authorized by the Constitution to add any property to an assessment roll. Their function is what the name imports—to *equalize* valuations of property already listed; to equalize them by making them conform to the true value in money. The section itself limits the Board to the equalization of the valuation of "the property *contained in the assessment roll.*"

The true value of money is the value it purports to have. The true value in money of other property is its value expressed in money. It follows that no force is added to the expression by the word "true." Since the State Board can not add to the property assessed, it can not, under pretense of making a sum of money conform to its money value, add to the amount already assessed, and make the additional sum the subject of assessment and taxation.

The section of the Constitution authorizes the State Board of Equalization "to increase or lower the entire assessment roll." But to what standard? So as to equalize it, and make the assessment conform to the (true) value in money of the property contained in the roll. They have no power under the Constitution to adopt any other standard.

Such, in our view, being the clear meaning of the Constitution, the resolution of the State Board of Equalization, and its direction to the Auditor, are to be read in the light of the Constitution thus construed. The order of the Board, therefore, increasing the entire assessment roll of the City and County of San Francisco, is not *void*. It is made in the language of the Constitution. But, in obeying the order, the Auditor is not authorized or empowered to add to the assess-

ments for money, for this would be, not to make property conform to its money value, but necessarily to add to the subjects of taxation. This the State Board has no power to direct, and has not in terms directed. If, indeed, the roll showed that ten dollars in money had been assessed at less than ten dollars, the Auditor could be compelled by proper order to change the valuation; but the case shows the existence of no such absurdity.

Our conclusion from reading the section of the Constitution as a whole is, that it neither authorizes an increase of the valuation of money already assessed at its legal value, nor does it prohibit an increase of all other property so as to make it conform to its actual value in money. The order of the Board is to be read as requiring the Auditor to add eight per centum to the assessed valuation of all "property, except money already assessed at its true and only legal value." The portion of the order of the State Board which reads, "amounting to the sum of seventeen million seven hundred and sixty-five thousand and twenty-five dollars," is mere surplusage, which does not affect the validity of the order.

It is claimed by respondent, that assessments for money loaned and secured by mortgages and deeds of trust, and which are evidenced by written contracts for the payment of specific sums, stand upon the same footing as assessments for money. But, however improbable the *fact* that all of such securities have been undervalued, we can not say, as a matter of *law*, that such is not the case. The credits in one man's hands may be of a "true value in money" greater than those in the hands of another; one man's note is worth more than another's—the circumstance that, in the latter case, the promise is in writing, does not necessarily make the specific sum mentioned in the writing the true value of the *chose*. So, a high rate of interest and a first-class security may make a mortgage worth more than the sum named in the instrument. And as such may be the case in a single instance, we can not say, as matter of law (whatever may be our individual opinions as to the probability of the fact), that it is not true of every debt secured by mortgage or deed of trust. Whatever injustice may follow from an arbitrary increase of all assessments to which the language of the Constitution applies, since men

already assessed to the full value of their property may have imposed upon them an additional burden—such an objection—if it be made—is an objection to the *system;* and with the policy or wisdom of a provision of the Constitution we have nothing to do.   In considering a statute which attempted to establish a like system, passed while the former Constitution was the organic law, and, in response to a suggestion that a statute so beneficent in its operation ought, if possible, to be sustained, the Supreme Court said: "The individual whose property has been assessed at a fair cash valuation has no occasion to appeal to the Board of Supervisors; but if, in the opinion of the members of the State Board, the property in a county as a whole has been assessed too low, they may summarily raise the valuation of all the property in the county—thus unjustly adding to the tax of those whose property has already been assessed at its full value.   Where, in such case, is the equality or uniformity which is the controlling idea of the Constitution?" (*Houghton* v. *Austin,* 47 Cal. 673.)   Since that decision the system has been engrafted in the Constitution, and bowing to behests of that instrument, it is our simple duty to carry it into effect.   We must accept an artificial system, whose evident intent is, that the equalization by the Board of Supervisors shall conclusively determine that all individual assessments within the county have been made—relatively to each other—equal and uniform—leaving to the State Board simply the task of equalizing assessments as between the several counties.

Let the writ issue, the Auditor, in obeying the same, to conform to the views hereinbefore expressed.

THORNTON and ROSS, JJ., and MORRISON, C. J., concurred.

SHARPSTEIN, J.:

I concur except as to that part of the opinion of the Court which holds that the State Board has not the power to increase or lower the *entire* assessment roll, including money assessed therein.

Section 3730 of the Political Code provides that "As soon as the Auditor receives from the State Board of Equalization a statement of the changes made by the Board in the assess-

ment roll of the county, * * * he must make corresponding changes in the assessment roll, by entering the same in a column provided with a proper heading in the assessment book."

Without going into details, it is sufficient for the purposes of this case to state that the petitioners allege that the respondent, who is the Auditor of the City and County of San Francisco, refuses to perform the duty imposed upon him by said section of the Code. The respondent, in his answer, does not deny that he has received from the State Board of Equalization a statement of the changes made by it in the assessment roll of said city and county, or that he has refused to make corresponding changes in said assessment roll. But he denies that it is his duty to make said changes, because, as he alleges, " the assessment roll of the city and county of San Francisco contains assessments for money in the total sum of nine million eight hundred and thirty-one thousand nine hundred and ninety-two dollars," and thirty-two million eight hundred and sixty-two thousand two hundred and sixty-one dollars "for money loaned and secured by mortgages and deeds of trust," which have a fixed value that can not be increased or diminished by said Board.

The statement of the Board is to the effect that it has increased the entire assessment roll of said city and county eight per cent. The Constitution makes it the duty of the Board "to equalize the valuation of the taxable property of the several counties in the State for the purposes of taxation," and under such rules of notice as it may prescribe "to increase or lower the entire assessment roll." (Const., § 9, art. xiii.)

The respondent contends: 1. That the State Board has no power to raise or lower the value of money assessments; 2. That the value of mortgages is limited by written contract, and that the money value can be no greater than the number of dollars the contract calls for; 3. That the order of the State Board should not apply to valuations for city and county property.

The power of the State Board to raise or lower money assessments is denied by the respondent's counsel on the ground that money is the standard by which all values are fixed by

the Congress of the United States, which has exclusive power, under the Constitution of the United States, to coin money and regulate the value thereof, and that the laws of Congress, made in pursuance of the Constitution of the United States, are paramount to any State law or Constitution.

It is perhaps a sufficient answer to this argument to say that Congress has fixed the value on money for one specific purpose only, *i. e.*, as a legal tender. It has not attempted to fix the value at which it may be assessed in the various States of the Union for the purpose of taxation. A stronger argument against the power of the Board to increase an entire assessment roll which contains an assessment of money, may be drawn from the last clause of the section of our own State Constitution, to which reference has already been made. It is contended that the power of the Board is limited by that clause, and that it can only "increase or lower the entire assessment roll" so as to "make the assessment conform to the true value in money of the property contained in said roll." And it is said that the money contained in the assessment roll must necessarily conform to its true value in money, and that that conformity must necessarily be destroyed by increasing or lowering the entire assessment roll.

If the Board can not do what it has attempted to do in this case it seems to me that it can not interfere in any manner with the assessment rolls of counties. So long as a part is less than the whole, I can not see how an *entire* assessment roll can be increased or lowered, by increasing or lowering only a *part* of it. If the language of the Constitution had been that the Board might increase or lower all the assessments contained in a roll except those for money, it would have been too plain to admit of construction. But it does not say that; and yet it is claimed that it means that, because such increase or diminution is authorized for the purpose of making "the assessment conform to the true value in money of the property contained in said roll." Now the obligation to make the assessment of that species of property denominated money, conform to its true value in money, is no stronger than it is to make the assessment of any other species of property conform to its true value in money. For the

purposes of taxation money is property, and all property "shall be taxed in proportion to its value, to be ascertained as provided by law." (Const., § 1, art. xiii.) I know of no law which provides that the value of money shall be ascertained in a different way from that in which the value of any other property must be ascertained. It must all be done through the agencies of assessors and County and State Boards of Equalization; and why their over-valuation of money should be subject to review by this Court, while their over-valuation of any other kind of property can not be so reviewed, passes my comprehension. If it had not been the intention of the framers of the Constitution to ignore, for the purposes of taxation, any distinction between money and other property, they would not unqualifiedly have declared that the word property, as used in the article on revenue and taxation, should include moneys. And yet the whole weight of the argument in support of the right of this Court to review the action of the State Board rests upon this clause: "And make the assessment conform to the true value in money of the *property* contained in said roll." That word "property" includes money. The Constitution so declares.

But we are asked to construe it in that clause, as if the Constitution had declared that the word "property" should not include money, or as if money had been expressly excepted from the property which might be affected by the action of the Board. I am unable to find anything in the language of the Constitution which to my mind indicates an intention to make that exception. Nor am I able to discover any reason for making it. It is impossible for the Board to increase or lower the *true* value in money of any property. True values can not be affected by its action. It may increase or lower the *assessed* value so as to make it, in the judgment of the Board, conform to the true value in money. But if it errs in judgment, this Court has no power to correct the error. If the Board may determine that an assessor has underestimated the value of all property except money, why may it not determine that he has underestimated the amount of money in his county?

But to my mind there is a more satisfactory reason than any which I have suggested for sustaining the action of the

Board. The clause which requires that the assessment shall be made to "conform to the true value in money of the property contained in said roll," relates only to the equalization of the assessment of the property contained in said roll. The State Board has no power beyond that of increasing or lowering the entire assessment roll. (*Wells, Fargo & Co.* v. *The State Board,* 56 Cal. 194.) The County Board has the exclusive power to raise or lower any individual assessment contained in a roll. (Id.)

Any provision of the Constitution that relates to the equalization of individual assessments applies exclusively to County Boards. All of Section 9 of Article xiii, that can have any application to the State Board, ends with these words: "To increase or lower the entire assessment roll." These are followed by the words: "Or any assessment contained therein, so as to equalize the assessment of property contained in said assessment roll, and make the assessment conform to the true value in money of the property contained in said roll." Now, it was distinctly held, in *Wells, Fargo & Co.* v. *The State Board, supra,* that the State Board could not increase or lower any assessment contained in any assessment roll for any purpose. Therefore, the power to increase or lower "any assessment contained therein, so as to equalize the assessment of property contained in said assessment roll, and make the assessment conform to the true value in money of the property contained in said roll," is vested in the County Boards exclusively.

The object of increasing or lowering an entire assessment roll is not to equalize the assessment of the property contained in it, nor to make the assessment conform to the true value in money of the property contained in it, but to make the assessed value of property contained in any one roll conform to the assessed value of the property contained in every other roll. In other words, "to equalize the valuation of the taxable property of the several counties for the purposes of taxation." Before the State Board can do that, the County Boards must equalize the individual assessments contained in the respective rolls of their several counties, and for that purpose any County Board may increase or lower any assessment.

contained in the roll of its county so as to make such assess-
ment conform to its true cash value. The theory of the Con-
stitution doubtless is, that any County Board will endeavor
to do exact justice as between the taxpayers of the county
for which it is acting. But that the aggregate value of all
the taxable property of a county, after the equalization of the
several individual assessments by the County Board, may be
comparatively too high, or too low, so that in order to make
it correspond with the assessed value of property in other
counties, it must necessarily be increased or lowered. It is
only the sum total of an assessment roll that can be increased
or lowered. The Board can not increase or lower any assess-
ment contained therein; consequently it can not increase or
lower the assessment of real estate, or money, or personal
property other than money.

A question which, as I think, bears a very close analogy to
the one now under consideration, arose in *Adsit* v. *Lieb*, 76
Ill. 198. In that State the State Board of Equalization is
created by the Legislature, and invested with powers similar
to those conferred by the Constitution upon the State Board
of this State. In Illinois the State Board, for the purpose of
equalization, is required to " consider the following classes of
property separately, viz.: Personal property; railroad and tel-
egraph property; lands, and town and city lots." No mention
is made of money; and if that is included, it must be under
the head of personal property. One Adsit, a banker in Chi-
cago, Cook County, was assessed for money on hand, forty-
seven thousand three hundred dollars, and for a safe, two
hundred and fifty dollars, making a total of forty-seven thou-
sand five hundred and fifty dollars. That assessment was
neither increased nor diminished by the County Board of
Equalization; but the State Board, in equalizing the assess-
ments of the different counties, added sixty-eight per cent. to
that of Cook County, and thereby increased Adsit's assess-
ment from forty-seven thousand five hundred dollars to sev-
enty-nine thousand eight hundred and eighty-four dollars.
He filed a bill against the County Clerk and the Tax Col-
lector, to enjoin the extension of taxes upon his moneys and
funds, as equalized by the State Board. His bill was dis-

missed on demurrer, and on appeal the Supreme Court affirmed the decree of the lower Court.

It is true, that the language of our Constitution differs from that of the statute of Illinois upon this subject. But it is, nevertheless, a significant fact, that under the power to raise or lower the assessed value of personal property, the State Board did raise the assessed value of a banker's money sixty-eight per cent., which could not have been done without increasing its amount sixty-eight per cent., because the Board could not have increased the value of forty-seven thousand five hundred and fifty dollars in money sixty-eight per cent. without adding sixty-eight per cent. to it. The power of the Board there was to " determine such rates of addition to or deduction from the listed or assessed valuation of each of said classes of property in each county, or to or from the aggregate assessed value of each of said classes in the State as may be deemed by the Board *equitable* and *just.*" No one would give the Board credit for having deemed it *equitable and just* to hold that forty-seven thousand two hundred and fifty dollars in money was of the value of seventy-nine thousand six hundred and thirty-four dollars in money. That would be absurd. And that was not what the Board did. It held, in effect, that Adsit had more money than had been assessed to him, and that the same was true of every other man in Cook County who had money. And the Court refused to review the action of the Board in that respect. If the Courts of that State had held otherwise, I can not see upon what principle the Board could have satisfied any Court that it had deemed it *equitable and just* to determine that every dollar of Adsit's money was worth nearly two dollars. And that probably is not what the Board would have attempted to do. But it probably would have attempted to show that all the money in Cook County had been assessed at sixty-eight per cent. less than its actual value, by reason of there being sixty-eight per cent. more than the assessment roll disclosed. The Courts, however, held that that was a matter for the Board to determine, and that its determination was final and conclusive.

If I rightly interpret the opinion of the Court in *Wells, Fargo & Co.* v. *The State Board, supra,* the clauses of the Constitution which bear upon this question, should be read,

in the light of that opinion, as follows: "The State Board is hereby authorized and empowered under such rules of notice as it may prescribe, as to its action, to increase or lower the entire assessment roll of any county; and County Boards are hereby authorized and empowered under such rules as to notice as they may prescribe, as to the county assessments, to increase or lower any assessment contained in an assessment roll so as to equalize the assessment of the property contained in said assessment roll, and make the assessment roll conform to the true value in money of the property contained in said roll." It seems to me that this must necessarily result from reading the *proviso* which contains these clauses distributively—*redendo singula singulis.*

The object of creating a State Board of Equalization is apparent, and it may rightfully exercise, any power conferred upon it by the Constitution, unless prohibited from so doing by the Constitution of the United States. Its powers are defined by the same instrument that defines the jurisdiction of the several Courts of the State. So long as it does not exceed the power conferred upon it, no mere error that it may commit is reviewable by any Court. The duty of the Court is to ascertain the intention of the framers of the Constitution, from the language employed by them to express that intention. When ascertained, that intention must prevail, without regard to consequences. Those who make constitutions and laws can not pay too much heed to consequences— Courts can not consider them.

It is unnecessary for me to discuss any other point on respondent's brief. Whatever power the Constitution confers upon the State Board it may exercise, without regard to the provisions of any statute, because the Constitution is paramount to any statute of this State. Statutes must be made to conform to Constitutions.

I think the application should be granted.

Myrick, J.:

I concur in the order that the writ issue, but think it should issue as prayed for, on the ground last discussed in the opinion of Mr. Justice Sharpstein.