[No. 11221.   In Bank.—January 29, 1886.]

## E. J. BALDWIN, APPELLANT, *v.* ASA ELLIS, TAX COLLECTOR OF LOS ANGELES COUNTY, RESPONDENT.

PLEADING — ACTION TO RECOVER ILLEGAL TAXES — OFFICIAL CHARACTER OF DEFENDANT. — The complaint in an action against a tax collector in his official capacity to recover an amount of money alleged to have been illegally collected from the plaintiff as taxes must aver the fact of the defendant being such an officer.

ID. — SEVERAL CAUSES OF ACTION — OMISSION OF NECESSARY AVERMENT IN ONE. — Where the complaint contains two causes of action, in one of which the official character of the defendant is averred, and in the other it is not, the omission in the latter is not cured by the averment in the former unless special reference is made thereto.

TAXATION — STATE BOARD OF EQUALIZATION — RAISING OR LOWERING ASSESSMENT ROLL. — The state board of equalization has power to increase or lower the assessment roll of a county so as to affect taxes for county purposes.

APPEAL from a judgment of the Superior Court of Los Angeles County.

The facts are stated in the opinion.

*Wells, Van Dyke & Lee,* for Appellant.

*Stephen M. White,* for Respondent.

FOOTE, C.—The plaintiff instituted this action with the object in view of recovering a sum of money alleged to have been illegally exacted from him, as taxes, by the defendant as tax collector of Los Angeles County.

A general demurrer was interposed to each of the alleged causes of action set out in the complaint, and being sustained, and the plaintiff declining to amend his pleading, judgment passed for the defendant, and from that this appeal is prosecuted.

The demurrer was properly sustained to the second cause of action set out at folio 75 of the transcript; for the reason that the action was brought against the defendant as tax collector, and not as an individual, and therefore in order that a judgment could properly be obtained against him as such, the allegations in that statement of the cause of action should have averred the fact of his being such officer. There is an allegation of the necessary kind in the first cause of action, but none in the second. These two must stand or fall by reason of their several recitals, and in the absence in one of any special reference to anything contained in the other, cannot be aided by anything save what is in itself averred. (*Haskell* v. *Haskell,* 54 Cal. 262.) The main question involved in the case is this: Has or not the state board of equalization the lawful right to increase or lower the assessment roll of the county of Los Angeles so as to affect taxes for county purposes?

The appellant's contention is, that it has no such power granted by law; that its rightful action affects the said roll only so far as state taxes are concerned.

By section 3650 of the Political Code, the county assessor must prepare an assessment book under the direction of the state board of equalization.

Under section 3655, same code, it is made his duty to transmit a summary of his assessment to that board on the first Monday in July of each year.

The board of supervisors of each county, acting as a board of equalization, must meet on the first Monday in July in each year, and must perform its duties as such, as prescribed in section 9, article 13, of the state constitution, which were accurately defined in *Wells, Fargo, & Company* v. *Board of Equalization*, 56 Cal. 198, speaking of the powers thereby granted to county and state boards, as follows: " And conferring on the local boards, the county boards, the power only to increase or lower the individual assessments upon the roll of their respective counties, and thus to make them equal with each other, and equivalent to the value in money of the property assessed."

After the county board acts within its own particular sphere, and completes its work by the third Monday in August of each and every year, then the state board must meet under section 3692 of the Political Code, subdivisions 8 and 9, to " remain in session from that date until the third Monday in September, Sundays excepted"; and " at such meeting to equalize the valuation of the taxable property of the several counties in this state for the purpose of taxation; . . . . to increase or lower the entire assessment roll, or any assessment contained therein, so as to equalize the assessment of the property contained in said roll, and make the assessment conform to the true value in money of the property assessed," etc.

And there is no language used in that section which can be construed into meaning that the power of said board is limited to the raising or lowering of the assessment roll for state purposes alone.

Under section 3695 of the Political Code, it then be-

comes the duty of the clerk of the state board to notify the various clerks of the boards of supervisors of the several counties of the action of the former body.

By section 3696, Political Code, it is made incumbent upon the state board, between the first and third Mondays in September, to fix the rate of state taxation, and give due notice thereof to the board of supervisors and auditor of each county. And such auditor, upon receiving a statement of the alterations thus made in the assessment roll of his county, must make corresponding changes by entering the same in a column provided with a proper heading, etc. (Pol. Code, sec. 3730.)

By section 3731, Political Code, the same county official must make certain entries, footings, and computations in the assessment book. In neither of the sections last mentioned is there any language employed which implies that there are to be *two* valuations upon property, one for state and the other for county purposes.

By section 3714, Political Code, it is made the duty of the county board of supervisors, on the first Monday in October of each year, to "fix the rate of county taxes." And the date of this action by them is after the time when the state board of equalization has ordered placed upon the assessment roll the *true value* of all *property* subject to taxation, if it acts at all either in raising or lowering the said roll.

If it was not the scheme of the law that there should be but one true valuation, and that the one fixed by the state board, why the enactment that the county board shall fix the rate of taxation after the former board has acted? It would seem as if this was the true rule of law in the matter, as then only can it be definitely known upon what total amount the rate of taxation is to be based. And a tax-payer cannot be damaged under this construction of the statutory enactments, for if the valuation were less, the percentage of taxation would be of necessity larger, and if by the action of the state board the valua-

tion be higher, the percentage necessary to meet county and state expenses would be less.

Section 3627 of the Political Code enacts that all taxable property must be assessed at its full cash value. If the appellant's theory of the law be the proper one, then there must be *two* cash valuations of the same piece of property, one for state and another for county purposes. There can be no real need of a state board of equalization, unless its main function be to ascertain and declare as near as possible the true valuation of taxable property.

This court in *People* v. *Dunn*, 59 Cal. 330, quoting its language in the case of *Wells, Fargo, & Co.* v. *State Board of Equalization*, 56 Cal. 194, said "that the power of the state board is to equalize the assessment rolls of the various counties by comparing the assessment roll of each county with the roll of each and all of the others, and thus to make the assessment conform to the *true value in money* of the *property* contained in the respective rolls."

Also in the same case and page this language was used: "The object which the constitution seeks to attain is, that the assessments shall be made to accord with the true value in money."

We cannot understand how it can be held in the light of such words that "the true value in money" means "*two* true values in money," which seems to be appellant's contention here.

By section 1837, Deering's Political Code, it is provided that "the rate of taxation shall be ascertained by deducting fifteen per cent from anticipated delinquencies from the aggregate assessed value of the property in the district, as it appears on the assessment roll of the county, and then dividing the sum voted by the remainder of such assessed value." And this same section provides that this rate must be so fixed at the time the levy of taxes is made. Here one assessment only is spoken of, and this must mean the one about which everything has been done, as contemplated by the statute, to make it

complete. Upon the whole case, it appears that the manifest intention of the law is, that when the state board raised the total value of the assessment roll of Los Angeles County, it was done for all taxable purposes, as well county as state, and that the plaintiff has only paid to the tax collector of that county, sued in this action, the amount of money which it was incumbent upon him to do.

The judgment should be affirmed.

BELCHER, C. C., and SEARLS, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment is affirmed.