[S. F. No. 6260.  In Bank.—October 2, 1912.]

## SAN DIEGO AND ARIZONA RAILWAY COMPANY (a Corporation), Petitioner, v. CALIFORNIA STATE BOARD OF EQUALIZATION et al., Respondents.

TAXATION—STATE BOARD OF EQUALIZATION—POWER TO MAKE ASSESS-MENTS ENDS WITH DELIVERY OF RECORD TO CONTROLLER—MAN-DAMUS.—Under the act of April 1, 1911 (Stats. 1911, p. 530), all power of the state board of equalization in the matter of the making of assessments for state purposes and the equalization thereof ends with the final delivery by it of the record of assessments to the state controller, and thereafter a writ of mandate will not lie to compel it to assess the property of a railroad for taxes for the current fiscal year. Such an assessment would be wholly void.

ID.—PRESUMPTION OF DUE PERFORMANCE OF OFFICIAL DUTY—DATE OF DELIVERY OF RECORD OF ASSESSMENTS.—On an application for such writ, in the absence of a showing to the contrary in the petition, it must be presumed that official duty has been regularly performed, and that the state board of equalization finally delivered its record of assessments to the state controller on the day required by the statute.

ID.—VOID ACT NOT COMPELLED BY MANDATE.—A writ of mandate will not issue to compel the performance of an act that will be wholly void, and of no possible benefit to the petitioner.

APPLICATION for a Writ of Mandate directed to the State Board of Equalization.

The facts are stated in the opinion of the court.

L. L. Boone, for Petitioner.

U. S. Webb, Attorney-General, and Raymond Benjamin, Chief Deputy Attorney-General, for Respondents.

THE COURT.—This is an original application to this court, upon notice, for a peremptory writ of mandate to require the defendants, the state board of equalization and the members thereof, to assess as operative property of plaintiff, for taxes for the year 1912, all of its roadbed, rights of way, and rolling stock used by it in the operation of its road between Twenty-sixth and Main streets in the city of San Diego

and the Mexican boundary line, together with certain switches. The notice of application, together with the petition, was filed herein June 24, 1912. The notice stated that the application would be made on July 1, 1912, at which time the application was presented to the court, a demurrer being filed by defendants based on the ground of want of facts to warrant the issuance of the writ prayed for. The matter was ordered submitted upon the demurrer upon briefs to be subsequently filed.

The theory upon which the application was based is that plaintiff railroad company ever since March 1, 1911, has been operating a railroad in this state within the meaning of section 14 of article XIII of our constitution (a new section adopted November 8, 1910), and that the property which it seeks by this proceeding to have assessed by the state board of equalization is operative property, assessable under such section only by such state board for the benefit of the state. Such state board has refused to so assess it on the ground that said railroad company "was not in operation, and is not now in operation," within the meaning of such constitutional provision. If this ground is well based, the property is locally taxable where situated for county and local purposes, and the petition shows that it has been listed for local taxation by the county assessor of San Diego County, and that portions of such property located in National City and Chula Vista have been listed in such cities for taxation.

Section 14 of article XIII of the constitution provides that the legislature shall pass all laws necessary to carry the section into effect, and shall provide for a valuation and assessment of the property enumerated in the section, prescribing the duties of the state board of equalization and any other officers in connection with the administration thereof. In pursuance of this provision, the legislative act for that purpose was adopted, the same having been approved April 1, 1911. (Stats. 1911, p. 530.) It is provided therein substantially as follows: The state board of equalization must assess and levy all such taxes between the first Monday in March and "the third Monday before the first Monday in July" (which this year was Monday, June 10), and must publish on said third Monday before the first Monday in July a notice in a daily newspaper in certain cities, stating that the assess-

ment for state taxes has been completed and that the record of assessments for state taxes will be delivered to the state controller on the first Monday in July, and that any company, etc., dissatisfied with the assessment may apply to the board· to have the same corrected in any particular. The board "shall have power at any time on or before the first Monday in July" to make corrections. On the first Monday in July the board, through its secretary, must deliver such record of assessments to the state controller, who shall proceed to collect the same. Such taxes are at once due and payable, and one-half thereof shall be delinquent on the sixth Monday after the first Monday in July and the other half on the first Monday in February next succeeding. There is absolutely nothing in the law that can be held to authorize the board of equalization to make any assessment for state purposes as to plaintiff after it has completed its record of assessments for the year and has delivered the same to the controller for collection, thus parting with all custody and control thereof. We have in mind, of course, the provisions of section 3885 of the Political Code, to the effect that no assessment or act relating to assessment or collection of taxes is illegal on account of informality, nor because the same was not completed within the time required by law and the decisions of this court thereunder, but there is not to be found therein any authority for the proposition that after the assessing officer or board has completed the assessment-roll, and delivered the same as a completed roll, in accordance with law, to the proper collecting officer, parting with all custody and control thereof, that he or it can, in the absence of express authority, change any of the assessments therein or add a new assessment thereto. In *Savings & Loan Society* v. *San Francisco*, 146 Cal. 673, [80 Pac. 1086], the change was held to be one expressly authorized by the board of supervisors under sections 3679 and 3681 of the Political Code, and it was said that "it must . . . be conceded that the assessor had no power to make any changes in the assessment after he delivered his roll to the board of equalization, unless such changes were authorized by the board of supervisors under sections 3679 and 3681 of the Political Code, or with the written consent of the city and county attorney under section 3881 of the same code." It seems very clear to us that at least with the final delivery of

the record of assessments by the state board of equalization to the state controller, all the power of the board in the matter of the making of assessments for state purposes and the equalization thereof is at an end.

There is nothing in the petition in this case to negative the idea that the state board of equalization complied with the law in the matter of the completion and delivery of the record of assessment to the state controller. In the absence of a showing to the contrary, it must be presumed that official duty has been regularly performed and, consequently, that the state board of equalization finally delivered its record of assessments to the state controller on July 1, 1912, the very day on which plaintiff presented its application for a writ of mandate to this court. If this be so, the state board of equalization has not had, at any time since July 1st, the power to make any assessment for the year 1912 against plaintiff, and any assessment now made by it for the year 1912 would be absolutely void. This matter was not submitted to us for decision until some days after July 1, 1912. What we have said appears to us to be a complete answer to the application, even if, as claimed by plaintiff, the state board should have assessed its property, a matter we have in no way considered and upon which we express no opinion. A writ of mandate will not issue to compel the performance of an act that will be wholly void, and of no possible benefit to the petitioner.

The application for a writ of mandate is denied.