[Civ. No. 1502. Fourth Appellate District.—April 26, 1934.]

A. J. KOCH et al., Appellants, v. BOARD OF SUPERVISORS OF ORANGE COUNTY, Respondent.

West & McKinney for Appellants.

S. B. Kaufman, District Attorney, W. F. Menton, Assistant District Attorney, and T. L. McFadden for Respondent.

JENNINGS, J.—The plaintiffs herein made application to the Superior Court of Orange County for the issuance of a writ of review for the purpose of having certain orders of the defendant, Board of Supervisors, vacated and annulled. The trial court, after evidence on behalf of the respective parties to the proceeding had been submitted to it, refused to issue the writ and entered judgment in favor of defendant for costs. The plaintiffs thereupon prosecuted this appeal from the judgment thus entered.

It is conceded that there is no dispute between the parties as to the facts which are involved in this appeal and a brief statement of them will be of assistance in the consideration of the legal problem which is here presented.

On July 31, 1933, an election was held in the Placentia Union Grammar School District of Orange County. The question submitted to the electors on the aforesaid date was whether or not the above-mentioned district which then constituted a portion of the territory included within the territorial boundaries of the Fullerton Union High School District should be withdrawn from said high school district and formed into another high school district which should bear the name of "Valencia High School District of Orange County". On August 2, 1933, the county superintendent of schools of Orange County filed with the respondent board his certificate as required by law certifying to the fact that a majority of the votes cast at said election were in favor of the withdrawal of said grammar school district from the Fullerton Union High School District and the formation of such new high school district. Thereupon, on August 2, 1933, the respondent Board of Supervisors acted upon the certificate of the superintendent of schools and made two orders, one of which excluded the Placentia Union Grammar School District from the Fullerton Union High School District, and the other created a new high school district whose boundaries are coterminous with the former boundaries of the Placentia Union Grammar School District. The name of the new high school district thus formed is "Valencia High School District of Orange County". The aforesaid orders of the respondent board are the orders which were sought to be vacated by the petition for the writ. It is undisputed that in making these orders the board used the assessment roll of the year 1932–1933, in determining the "assessed valuation" of the Fullerton Union High School District and the newly created Valencia High School District. This assessment roll showed that the assessed valuation of taxable property within the former district, after excluding therefrom the assessed valuation of property in the Placentia Union Grammar School District, was $21,524,870, and that the assessed valuation of taxable property in the Placentia Union Grammar School District was $9,510,140. The assessment roll for the year 1933–1934, after the board of equalization of the county

had completed its equalization on the third Monday in July, 1933, showed that the assessed valuation of taxable property in the Fullerton Union High School District, including the Placentia Union Grammar School District, was $27,090,170, and that the assessed valuation of property in the Placentia Union Grammar School District was $8,270,145. A deduction of the last-mentioned figure from the former demonstrates that, as shown by the assessment roll for the later year, the assessed valuation of property in the Fullerton Union High School District was $18,820,025.

Section 2.451a of the California School Code provides as follows: ''No order excluding territory from any high school district under the provisions of this article shall be made if the exclusion of the territory would reduce the assessed valuation of the high school district to $20,000,000 or less.'' It was the contention of appellants in the trial court, and it is the sole contention advanced by them on this appeal, that the respondent board, in determining the assessed valuation of the Fullerton Union High School District, should have used the assessment roll of the year 1933-1934, which would have shown that the assessed valuation of the high school district, after the Placentia Union Grammar School District was excluded, was $18,820,025, and the respondent board would then have been prohibited by the plain mandate of the above-mentioned statute from making the two orders sought to be annulled.

In the final analysis, the determination of the question which is here presented depends upon the completeness or incompleteness of the 1933-34 assessment roll. If on the date on which the two orders were made this roll was complete, and it must be declared that the assessed valuation of the high school district, exclusive of the assessed valuation of the grammar school district, was then less than $20,000,000, it is evident that the respondent board disregarded the statutory mandate in making the orders, and the application for the writ should have been granted. It is conceded that the respondent board, sitting as a board of equalization, had completed the task of equalization prior to the date of the two orders. Appellants urge that the accomplishment of this task was the last step in completing the assessment for the year 1933-34 and therefore on the date of the two orders the assessment for this year was final and complete, and

being the most recent assessment should have been used. Respondent concedes that if it may properly be declared that the assessment for the year 1933–34 had been completed on the date of the orders the trial court erred in refusing the writ. It is, however, contended that the assessment for the later year was not complete for the reason that the state board of equalization had taken no action upon it, and it is contended that prior to the time this latter body had acted the assessment roll was unfinished and incomplete and the respondent board was therefore not authorized to use it as a basis for determining the assessed valuation of the high school district.

Section 3650 of the Political Code requires the assessor "to prepare an assessment book, with appropriate headings, as directed by the State Board of Equalization, in which must be listed all property within the county". By the provisions of section 3652 of the same code the assessor is required to complete this assessment book on or before the first Monday in July of each year. Section 3654 of the Political Code provides that as soon as the assessment book is completed it must be delivered to the clerk of the board of supervisors, who must then immediately give notice thereof and of the time when the board of supervisors will meet to equalize assessments by publication. Section 3672 of the Political Code provides that the board of supervisors must meet on the first Monday of July in each year to examine the assessment book and equalize the assessment of property in the county, and that the board must continue in session for such purpose, from time to time, until the business of equalization is disposed of, but not later than the third Monday in July. It appears that appellants make no contention that the assessment in any year is finally accomplished until after the board of supervisors has completed the business of equalization, but that it is contended that when the board of supervisors has finished the task of equalization, the last step in the process of assessment has been taken and the assessment roll is final and complete.

However, it appears that there is another agency which must examine the assessment roll before it may be said to be complete. This agency is the state board of equalization, which by subdivision 8 of section 3692 of the Political Code is expressly empowered to "increase or lower the entire

assessment roll of any county so as to equalize the assessment of property within the state". The last-mentioned subdivision provides that the state board shall meet at the state capital on the first Monday in August and that it shall remain in session from day to day, holidays excepted, until the third Monday in the same month, and that it may, after notice has been given to the clerk of the board of supervisors of the county affected, increase or lower the assessment roll of any county. So long, therefore, as the assessment roll of a county is subject to examination by the state board, which is specifically empowered to order it to be increased or lowered, we think that it can hardly be maintained that it is complete. ■ We entertain the opinion, therefore, that the respondent board used the proper basis for determining the assessed valution of the two school districts in accepting the assessment roll of the year 1932–33 when it made the aforesaid orders on August 2, 1933. The calendar for the year 1933 shows that the first day of August in that year fell on Tuesday. The state board of equalization could not, therefore, have taken any action with respect to increasing or lowering the assessment roll of Orange County on the date on which the orders sought to be vacated were made.

We are fortified in this opinion by certain authorities to which our attention has been directed by the briefs of counsel. In *Baldwin* v. *Ellis*, 68 Cal. 495 [9 Pac. 652], the principal question which was presented for consideration was thus stated: "Has or not the state board of equalization the lawful right to increase or lower the assessment roll of Los Angeles so as to affect taxes for county purposes?" The Supreme Court answered this question in the affirmative. It was pointed out that section 3692 of the Political Code empowered the state board of equalization to "increase or lower the entire assessment roll" and that there is no language used in the section which can be construed into meaning that the power of the board is limited to the raising or lowering of the assessment roll for state purposes alone. It was also observed that the date specified by the Political Code for fixing the rate of county taxes was subsequent to the time when the state board of equalization had ordered placed upon the assessment roll the true value of all property subject to taxation, if it had taken any action with

respect to raising or lowering the assessment roll. It was remarked that this was significant as indicative of the scheme of the law that there should be but one true valuation, and that the one fixed by the state board, and that it was apparent that the true rule in the matter was that the valuation fixed by the state board was the true valuation since it could only be definitely known upon what total amount the rate of taxation would be based after the state board had acted.

In *Miller* v. *County of Kern*, 137 Cal. 516 [70 Pac. 549], the plaintiff had brought an action under section 3819 of the Political Code to recover a certain sum which had been paid under protest by plaintiff for state and county taxes on real and personal property for the fiscal year ending June 30, 1896. It was alleged in the complaint that the entire tax which had been assessed against plaintiff for the afore-mentioned year was void. A general demurrer to the complaint was sustained, and plaintiff declining to amend, judgment was entered in favor of defendant and plaintiff appealed. In reversing the judgment the Supreme Court made the following observations: ''The assessment of property and the levying and collecting of taxes thereon are proceedings *in invitum* and are *stricti juris* (*Weyse* v. *Crawford,* 85 Cal. 196 [24 Pac. 735]; *Dranga* v. *Rowe,* 127 Cal. 506 [59 Pac. 944].) Boards of Supervisors have power, sitting as boards of equalization, to increase or lower any individual assessment (Pol. Code, sec. 3673; *Allison etc. Co.* v. *Nevada County,* 104 Cal. 161 [37 Pac. 875]). And the state board may increase or lower the entire assessment roll. (Pol. Code, sec. 3692; *Baldwin* v. *Ellis,* 68 Cal. 495 [9 Pac. 652].) The assessment book cannot be said to be completed ready to be transferred to the tax collector until after the county board of supervisors has acted on the assessment as a board of equalization, and until after the auditor has 'corrected it and made it to conform to the requirements of the state board of equalization'.''

Appellants place much reliance on the decision in *Madary* v. *City of Fresno,* 20 Cal. App. 91 [128 Pac. 340]. In this case the plaintiff had brought an action to recover a sum of money alleged to have been paid by him under protest for taxes illegally levied and collected by the city of Fresno for the year 1909. It appeared that the defendant city had

by ordinance elected to avail itself of the services of the necessary county officers in the matter of the collection of taxes as it was permitted to do by statute. It also appeared that on August 16, 1909, the board of trustees of the city had by ordinance determined the amount of money to be raised by taxation for the needs of the city for the succeeding fiscal year; that prior to the above-mentioned date the county auditor had certified to the city trustees the value of taxable property within the city as equalized and corrected by the county supervisors acting as a board of equalization; that on August 16, 1909, the city trustees had calculated and by ordinance had established the rate of city taxes and levied the same at such per cent of the value of the taxable property within the city as would produce the amount required for the city's needs; that thereafter the state board of equalization by order increased the assessment roll or value of taxable property in Fresno County by adding twenty per cent thereto and upon notification thereof the county auditor made a corresponding increase in the value of all property assessed to each taxpayer and entered upon the assessment books as being due from the taxpayers of the city for city taxes an aggregated sum one-fifth greater than the amount originally fixed by the city trustees as necessary for the city's requirements. It was this twenty per cent excess or that part thereof which the plaintiff had paid under protest for the recovery of which the suit was brought. The judgment of the trial court was in plaintiff's favor and on appeal by the city this judgment was affirmed. It was pointed out that by statute the city trustees of the defendant city were required on the first Monday of August in each year to determine and fix by ordinance the amount of money required to be raised by taxation for the governmental needs of the city for the current fiscal year provided that on or before the first Monday of the preceding February the city had elected to have the duties of the city treasurer performed by the county treasurer and that by the same statute the county auditor was required, on or before the second Monday of August, to transmit to the city trustees a statement of the assessed valuation of all property in the city as equalized by the county supervisors, whereupon the city trustees were required, on the first Monday of September, to compute the rate of taxation, using the aforesaid valuation of the county

auditor as the basis therefor. It was remarked that it was evident that it was not the intent and purpose of the act which permitted the defendant city to avail itself of the services of necessary county officers in the collection of its taxes to merge and confound city and county business and that in discharging the duties of the city assessor, city tax collector, and city treasurer, the corresponding county officers became *ex officiis* city officers. It was then pointed out that in the matter of the assessment and levy of state and county taxes the procedure is different from that which is required to be followed in the assessment and levy of city taxes. In the former proceeding the county auditor was required, at the same time that he transmitted to the city trustees the statement of taxable property of the city as equalized by the county supervisors, acting as an equalization board, to send a duplicate thereof to the state board of equalization. When the statement thus sent to the state board, as changed and corrected by the state board, was returned to the county auditor at a time not later than the second Monday in September, the county supervisors were required on the third Monday in September to fix the county tax rate, using the finally corrected assessment valuation as the basis of computation. However, prior to any action by the state board of equalization, it had become the duty of the city trustees to fix the city tax rate and in determining this rate they were obliged to use the assessed valuation of city property as equalized by the county supervisors. It was declared that, under these circumstances, the contention that the amount of taxes to be paid by the several taxpayers of the city for city purposes was to be computed not upon the assessed valuation which was used for the determination of the city tax rate but upon the valuation as finally corrected and equalized by the state board was not warranted and that to sustain such a contention would not only lead to inconsistencies and absurdities but would also amount to saying that there could be two valid assessments for the same purpose. It was further observed that any change in the assessed valuation of city property by the state board of equalization would have, as to the defendant city, one of two equally intolerable effects. If the valuation were lowered, the city government would thereby be deprived of necessary funds for its maintenance. If the valuation were increased the city would be

given what it neither needed nor asked, thereby unjustly adding to the burdens of its citizens. From this line of reasoning the conclusion was reached that the judgment of the trial court permitting plaintiff to recover the amount for which the suit was brought was correct.

It is our opinion that the decision in the Madary case is not of assistance in the solution of the problem which is here presented. The holding in that case was that, under the circumstances which were there shown to exist, the city taxes which had been properly computed on the assessed valuation of property within the city, as equalized by the county board of supervisors, could not be affected by a subsequent change in the assessed valuation of such property for state and county purposes made by the state board of equalization. We do not understand that in the situation presented on this appeal there is involved any question of the legality of city taxes levied by any city that may be located within the boundaries of the high school district or the effect that might be produced upon the assessed valuation of taxable property within such a city by action that might subsequently be taken by the state board of equalization in raising or lowering the entire assessment roll of Orange County. It is significant that the court in the Madary case specifically noted that the procedure which then obtained in the matter in the assessment and levy of state and county taxes was different from that which the statute required the city of Fresno to pursue in the assessment and levy of taxes for municipal purposes and that it is expressly noted that in fixing the rate of county taxes the board of supervisors is required to use the assessment valuation as changed and corrected by the state board of equalization as the basis of its computation.

For the reasons herein stated we think that the respondent board used the proper assessment roll in determining the "assessed valuation" of the two school districts and that appellants were not entitled to the writ which they sought for the purpose of vacating the two hereinabove mentioned orders of the respondent board.

The judgment from which this appeal has been taken is therefore affirmed.

Barnard, P. J., and Marks J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 25, 1934.