[Sac. No. 6640.   In Bank.   Oct. 27, 1955.]

THE PEOPLE, Petitioner, v. COUNTY OF TULARE et al., Respondents.

Edmund G. Brown, Attorney General, E. G. Benard, James E. Sabine and Irving H. Perluss, Assistant Attorneys General, and Edward P. Hollingshead, Deputy Attorney General, for Petitioner.

Ralph B. Jordan, County Counsel, Calvin E. Baldwin, Assistant County Counsel, Holbrook, Tarr, Carter & O'Neill, W. Sumner Holbrook, Jr., Francis H. O'Neill and Leroy McCormick for Respondents.

Hutchinson & Quattrin as Amici Curiae on behalf of Respondents.

McCOMB, J. pro tem.*—Petitioner is seeking the issuance of a writ of mandate to respondents directing them to increase the assessed valuation of all taxable property on the local rolls of Tulare County in compliance with an order of the State Board of Equalization dated August 15, 1955.

The order in question was issued by the State Board of Equalization upon findings made by said board following a hearing held by it on July 25, 1955, entitled "In the Matter of the Equalization of the Local Roll of Tulare County for the Fiscal Year 1955-1956" and conducted pursuant to the provisions of article XIII, section 9, Constitution of the State of California and sections 1831-1834 of the Revenue and Taxation Code.

The board found that the "average ratio of assessed value to market value of the taxable property within the County of Tulare is such that the addition of twenty-three (23) per centum to the valuation of said county is required to equalize the assessment of the property contained in said local assessment roll with the assessment of property in the several counties of the State" and ordered that "the assessed value of all taxable property in the local assessment roll for the fiscal year 1955-56 of the County of Tulare, except such property as is not subject to the laws generally applicable to the assessment and equalization of property by reason of specific constitutional provisions relating thereto, be increased by twenty-three (23) per centum."

Also on August 15, 1955, the State Board of Equalization notified the county auditor and the Board of Supervisors of the County of Tulare, and the city council of each city

---

*Assigned by Chairman of Judicial Council.

in that county, of its order and directed the county auditor to increase the assessment of all property affected by its order by making the corresponding changes in the assessment roll.

On August 30, 1955, a proceeding was commenced in the Superior Court of Tulare County by the County of Tulare, as plaintiff, against the State Board of Equalization, the members thereof, and the county auditor of said county. In said action the county of Tulare challenges the regularity of the proceedings before the State Board of Equalization, the findings of the board and the validity of its order. On the same date an alternative writ of mandate was issued in that action by the superior court, directing the board and its members to set aside their order of August 15, 1955, or show cause as to why they had not done so, directing the county auditor to omit from the county assessment roll the 23 per cent increase as ordered by said board, commanding the board to show cause why its proceedings, insofar as they related to the county of Tulare, should not be reviewed according to the provisions of section 1094.5 of the Code of Civil Procedure, and ordering that pending the determination of said action the order of the board be stayed.

On September 1, 1955, the Board of Supervisors of Tulare County fixed the 1955 tax rate for said county, pursuant to section 2151 of the Revenue and Taxation Code, computing such rates without the 23 per cent increase ordered by the State Board of Equalization. Similarly, on August 31, 1955, the City Council of the City of Woodlake in Tulare County, which city collects its taxes on the county roll under the consolidated system of taxation, fixed its tax rate without including in its computation the 23 per cent increase ordered by the board. Each of these levies was made on the last day on which these entities could levy tax rates for 1955, and was in compliance with the mandate of the superior court.

This court issued an alternative writ of mandate returnable September 30, 1955.

The Legislature, in section 1094.5 of the Code of Civil Procedure, has provided an appropriate method of reviewing acts of a statewide administrative and quasi-judicial agency such as the State Board of Equalization. (*Temescal Water Co.* v. *Department of Public Works,* 44 Cal.2d 90, 105 [9] [280 P.2d 1].) The action of the State Board of Equalization is reviewable in the superior court pursuant

to the provisions of section 1094.5 of the Code of Civil Procedure. (*Temescal Water Co.* v. *Department of Public Works, supra*; *Eastern-Columbia, Inc.* v. *County of Los Angeles*, 61 Cal.App.2d 734, 745 [143 P.2d 992].)

Also rule 56(a)(1), Rules on Original Proceedings in Reviewing Court, 36 Cal.2d 41, provides: "If the petition might lawfully have been made to a lower court in the first instance, it shall set forth the circumstances which, in the opinion of the petitioner, render it proper that the writ should issue originally from the reviewing court." ▮ In the instant case, application has in fact been made by respondent to the superior court having jurisdiction and that court having assumed jurisdiction, no valid reason appears why this court should take original jurisdiction in the matter. (*Cf. Roma Macaroni Factory* v. *Giambastiani*, 219 Cal. 435, 436 [1] [27 P.2d 371] ; *Brougher* v. *Board of Public Works*, 205 Cal. 426, 440 [6] [271 P. 487].)

▮ Where, as in the instant case, it appears that there is pending another action in the superior court seeking the same result, involving the same parties and the same issues, this court will generally not assume jurisdiction. (*Irvine* v. *Gibson*, 19 Cal.2d 14, 16 [3] [118 P.2d 812].) ▮ When another court with concurrent jurisdiction has assumed the same in an action seeking the same relief between the same parties, this court ordinarily will not assume jurisdiction. (*W. R. Grace & Co.* v. *California Emp. Com.*, 24 Cal.2d 720, 727 [2] [151 P.2d 215] ; *McMullen* v. *Glenn-Colusa Irr. Dist.*, 17 Cal.App.2d 696, 701 [6] [62 P.2d 1083].)

The exceptional facts presented in *Perry* v. *Jordan*, 34 Cal. 2d 87 [207 P.2d 47], are not here present. The cited case involved a statewide election, callable at the governor's discretion, for a special or general election, under conditions as to which he could not act while litigation was pending, and in such case the parties were not the same. Therefore, a plea in abatement would not lie. Such is not the situation in this case. In the present case none of the special factors warranting the original writ in the Perry case exist. The dispute involved is solely between the State Board of Equalization and the county of Tulare. No question is involved as to the other 13 counties which have been the subject of similar proceedings before the state board because (a) the hearings were conducted separately and (b) the order in question was limited solely to the single county.

For the foregoing reasons the alternative writ heretofore issued is discharged and the petition denied.

Shenk, J., Carter, J., and Schauer, J., concurred.

TRAYNOR, J.—I dissent.

I would issue the peremptory writ forthwith for the following reasons:

(1) The State Board of Equalization not only had jurisdiction but had the duty under the California Constitution to equalize the valuation of taxable property in the several counties (Const., art. XIII, § 9; Rev. & Tax. Code, § 1831; *People* v. *Dunn,* 59 Cal. 328, 330-331; *Baldwin* v. *Ellis,* 68 Cal. 495, 499-500 [9 P. 652]) despite the suspension of chapter 1466, Statutes of 1949. (Stats. 1951, ch. 1554; Stats. 1953, ch. 362; Stats. 1955, ch. 256; see 18 Ops. Cal. Atty. Gen. 66.)

(2) There is a compelling necessity for such equalization: (a) State assessed property (largely public utility property) and locally assessed property are taxed at the same rate. (Const., art. XIII, § 14.) To prevent discrimination against either class of property in violation of article XIII, section 1 of the Constitution, both must be assessed at the same level. Since it is implicit in the board's order that it assesses utility property in Tulare County at a higher level than the county assessor assesses property in the county, a prima facie case of discrimination against utility property exists if the assessments are not equalized. (b) The amount of school equalization aid (see Ed. Code, §§ 7031-7038; Report of the Senate Committee on State and Local Taxation, part Six, March 1953, pp. 15-17) distributed by the state to school districts depends in part on the assessed value of property in the district. In the current fiscal year more than $84,000,000 will be distributed by the state to school districts. To prevent discrimination among school districts in the distribution of this aid, intercounty assessments must be at the same level. (c) Equitable assignment of priorities in the advancement of state funds for school construction and uniformity as to repayment of such advances (Ed. Code, §§ 5044.5, 5053 et seq., 7705, 7725 et seq.), uniform application of tax rate and bonded indebtedness limitations (e.g. Ed. Code, §§ 6357, 7431), equitable distribution of taxes of districts embracing areas in more than one county (e.g. Ed. Code, § 6381; Health &

Saf. Code, §§ 14600-14760), and uniform application of house-holders' and veterans' exemptions (Const., art. XIII, §§ 1¼, 10½) and real property ownership qualifications of recipients of welfare aid (Welf. & Inst. Code, §§ 1520, 2164, 3047), require intercounty assessments at the same level. Thus, if the board's order in this case is valid and is not enforced, Tulare County will enjoy a discriminatory advantage with respect to the matters described under (b) and (c) over the 13 other counties that have complied with the board's orders to increase their assessment rolls. (d) Should a state ad valorem tax be levied (see Const., art. IV, § 34(a); Rev. & Tax. Code, §§ 28001-28011), intercounty equalization is essential to insure the same level of assessment throughout the state.

(3) Following equalization by the State Board of Equalization the county officials had no discretion to exercise with respect to the board's order but were under a ministerial duty to obey it. (*People's Water Co.* v. *Boromeo,* 31 Cal. App. 270, 272-273 [160 P. 574].) Mandamus is the traditional remedy to enforce that duty. (*People* v. *Dunn,* 59 Cal. 328; *Morton* v. *Broderick,* 118 Cal. 474, 480-481 [50 P. 644].)

(4) Since the time schedule established by statute for the delivery of the roll, fixing the tax rate, and the execution of affidavits is directory and not jurisdictional (Rev. & Tax. Code, § 24;* *Universal Consol. Oil Co.* v. *Byram,* 25 Cal.2d 353, 362-363 [153 P.2d 746]; *Ryan* v. *Byram,* 4 Cal.2d 596, 603-607 [51 P.2d 872]; *Whiting Finance Co.* v. *Hopkins,* 199 Cal. 428, 436 [249 P. 853]; *Buswell* v. *Supervisors of Alameda County,* 116 Cal. 351, 353-354 [48 P.2d 226]; see *Steele* v. *San Luis Obispo,* 152 Cal. 785, 786-788 [93 P. 1020]), an order of this court to the county officials to do now what they should have done will not invalidate the tax levy. Refusal of county officials to perform their ministerial duties within the time prescribed cannot frustrate the equalization demanded by the Constitution or render this court impotent to enforce it.

---

*"No act in all the proceedings for raising revenue by taxation is illegal on account of informality or because not completed within the required time."

In *San Diego etc. Ry. Co.* v. *State Board of Equalization,* 164 Cal. 41, 43 [127 P. 153], relied on by respondents, the assessment roll had been delivered "in accordance with law." In the present case the assessment roll has not been delivered in accordance with law. The auditor did not enter the changes ordered by the board, nor did he certify that he had "corrected it as required by the State Board of Equalization." (Rev. & Tax. Code, § 2601.)

Moreover, the contention that it would be an idle act for this court to issue a writ in this case applies with greater force to an order of the superior court under section 1094.5 of the Code of Civil Procedure in view of the delay necessarily involved in getting a final determination of this court following an appeal from such an order. If section 1094.5 affords the appropriate remedy in cases of this kind, and if court orders would be futile if not made within the statutory time schedule for completing the taxing process, county officials need only to proceed under that section in the superior court to prevent the constitutional provisions for equalization from ever being carried out, for a final determination could not be reached in such proceeding within the time schedule.\*

(5) The fact that proceeding No. 47478 is now pending in the Superior Court in Tulare County does not bar the present proceeding. Compelling reasons for an immediate final determination by this court are present here as they were in *Perry* v. *Jordan,* 34 Cal.2d 87, 90-91 [207 P.2d 47], in which a prior proceeding in mandamus was also pending in the superior court. Although completion of the taxing process within the statutory time schedule is not jurisdictional, it is of vital public importance that it be completed as soon as possible to avoid complete disruption of the taxing process.

The entire record is now before this court, and only confusion can result from the refusal to make a final determination now as to the validity of the board's order, the identical question that would have to be determined by this court

---

\*The equalization of the local roll by the Board of Supervisors is not completed until the third Monday in July (Rev. & Tax. Code, § 1603) and no action can be taken by the State Board of Equalization on that roll until after that time. (*Koch* v. *Board of Supervisors,* 138 Cal.App. 343, 348 [32 P.2d 163].) The State Board of Equalization sits from the third Monday in July to and including the third Monday in August, and it is during that time that it is required to equalize the valuation of the taxable property in the several counties of the State. (Rev. & Tax. Code, § 1831; Cal. Admin. Code, tit. 18, rule 2700.) On or before September 1st of each year the County Board of Supervisors fixes the rates of county and district taxes. (Gov. Code, § 29120.) The auditor must deliver the secured roll "corrected . . . as required by the State Board of Equalization" on or before October 1st. (Rev. & Tax. Code, § 2601.) One half the real property taxes on the secured roll and all of the personal property taxes are due November 1st (Rev. & Tax. Code, § 2605) and, if unpaid, are delinquent December 10th. (Rev. & Tax. Code, § 2617.) The second half of the real property taxes is due January 20th (Rev. & Tax. Code, § 2606) and, if unpaid, is delinquent April 10th. (Rev. & Tax. Code, § 2618.)

following an appeal from an order of the superior court. Since the jurisdiction of the State Board of Equalization to equalize the valuation of property in the several counties is derived directly from the Constitution (Const., art. XIII, § 9), the court does not exercise an independent judgment on the evidence, and the board's determinations of fact are therefore not subject to reexamination in a trial de novo in the superior court. Only questions of law are presented, namely: Did the board proceed without or in excess of its jurisdiction? Did it commit any prejudicial errors of law or abuse of discretion? Is its order supported by substantial evidence? (*Covert* v. *State Board of Equalization*, 29 Cal.2d 125, 131-132 [173 P.2d 545].)

(6) The record discloses that the county of Tulare, after full opportunity afforded by the board to show cause why the valuations on the local roll of the county should not be increased, not only failed to show that the action of the board was arbitrary or capricious, but failed to carry its burden of proof or even produce any substantial evidence of the ratio of the assessed value on the local roll to market value (see Cal. Admin. Code, tit. 18, rule 2704; *Howard County* v. *State Board of Equalization*, 158 Neb. 339 [63 N.W.2d 441, 448]), that the State Board of Equalization did not act without or in excess of its jurisdiction, or commit errors of law or abuse its discretion, and that there is ample evidence to support its order. (*Los Angeles Gas & Elec. Co.* v. *County of Los Angeles*, 162 Cal. 164, 167-170 [121 P. 384, 9 A.L.R. 1277]; *Miller & Lux* v. *Richardson*, 182 Cal. 115, 128 [187 P. 411]; *Utah Const. Co.* v. *Richardson*, 187 Cal. 649, 654-655 [203 P. 401]; *Eastern Columbia, Inc.* v. *County of Los Angeles*, 61 Cal.App.2d 734, 745-746 [143 P.2d 992].)

Gibson, C. J., and Spence, J., concurred.

Petitioner's application for a rehearing was denied November 23, 1955. Gibson, C. J., Traynor, J., and Spence, J., were of the opinion that the petition should be granted.