[S. F. No. 3272.   Department One.—May 3, 1905.]

# SAVINGS AND LOAN SOCIETY, Appellant, v. CITY AND COUNTY OF SAN FRANCISCO, Respondent.

Taxation — Assessment to Savings and Loan Society — Solvent Credits.—The amount of the loans made by a savings and loan society, which are secured by stocks and bonds, were properly assessable to it as solvent credits.

Id.—Action to Recover Taxes Paid—Change in Assessment—Issue as to Authority—Presumption—Burden of Proof—Findings.— In an action by the savings and loan society to recover taxes paid under an assessment for solvent credits alleged to have been made by an unauthorized change by the assessor, where issue was joined as to whether it was made without any authorization from the board of equalization, the presumption is in favor of the assessment, and the burden of proof is upon the plaintiff to show that it was not so authorized; and if the findings show such authority, the plaintiff's case must fail.

Id.—Power of Board of Equalization.—Under section 3681 of the Political Code, the board of equalization may authorize changes in the assessment-roll, not only to add a new assessment, but also to correct the description of property already assessed with an insufficient and incomplete description, and may empower the assessor to change the designation of the kind or quality of part of the personal property from "bonds" to "solvent credits."

Id.—Acquiescence in Unauthorized Change.—Where, pending the session of the board of equalization, the assessor had, without previous authority, made a change in the assessment, which was brought to the notice of the board and of the taxpayer, who merely objected to the want of authority, and such change was acquiesced in by the board, which allowed the assessment to stand as changed,— it thereby in effect directed and required such change and so imparted authority and validity to what was previously unauthorized. It was not necessary to go through the manual work of restoring the original entry, and again making the same change.

Id.—Notice to Taxpayer—Voluntary Appearance—Waiver of Time —Jurisdiction of Board.—Where the taxpayer was before the board of equalization, in response to a citation to show cause why its assessment should not be increased, such citation included notice of an increase by the addition of other property, and where the taxpayer appeared before the board, and was informed of the change made by the assessor, and did not urge that it did not own solvent credits in the amount stated, but merely objected that the change in the assessment was unauthorized, its voluntary appearance was a waiver of objection that notice was not given of such change, and the board had jurisdiction to proceed and sanction the same.

CXLVI. Cal.—43

ID.—CONSISTENCY OF PLEADINGS AND FINDINGS—ANSWER. — The fact
that the defendant had denied that any addition was made to the
assessment by the change, and alleged that the plaintiff had origin-
ally been assessed for its solvent credits, did not preclude it from
denying that the change had not been authorized; and findings on
the latter issue are not inconsistent with any admissions made by
the pleadings.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco. M. C. Sloss, Judge.

The facts are stated in the opinion of the court.

Drown, Leicester & Drown, for Appellant.

Franklin K. Lane, City Attorney, for Respondent.

ANGELLOTTI, J.—This is an action to recover the sum of
$5,702.46, taxes for the fiscal year ending June 30, 1900, paid,
under protest, upon an apparent assessment of $349,844
against plaintiff for solvent credits, upon the ground that
said apparent assessment was void. The defendant had judg-
ment and plaintiff appeals therefrom upon the judgment-roll.

At the time of the completion of the assessment-book and its
delivery by the assessor to the clerk of the board of super-
visors, the only description of personal property contained
in the assessment against plaintiff was to be found in
the general column headed "Description of Property" with
subheadings devoted to real property, and was as follows,
viz.: "Fur. $1000. Money $53,916. Bonds $569,952. Fran-
chise $2500. Bonds $1,183,244"; and in the column headed
"Personal," under the subheading "Money and Solvent
Credits," "$1,807,112," and under the subheading "Other
Personal Property," "$1000, 2500," the various valuations
aggregating $1,810,612.

Thereafter, on July 14, 1899, while said assessment-book
was in the possession of the board of supervisors, sitting and
acting as a board of equalization, the assessor made the fol-
lowing changes in the descriptive part of the assessment,
namely: He erased the words and figures "Bonds $569,952"
and wrote in place thereof "Solv. Crdts. $349,844"; he
changed the item "Bonds $1,183,244" to "Bonds $863,052";
and he changed the figures under the heading "Money and

Solvent Credits" from "$1,807,112" to "$1,266,812," thus making the valuation of personalty aggregate $1,270,312 instead of $1,810,612.

The county auditor computed the taxes to be paid by plaintiff upon its personalty upon said total sum of $1,270,312 only.

When it came to the collection of taxes it was ascertained and admitted that the only assessable bonds belonging to plaintiff on the first Monday of March, 1899, were certain municipal, county, and school district bonds, aggregating in value $220,108, and that the assessment on bonds was invalid to the extent of $642,944, the tax on which, at the rate for the year, was $10,479.98. This amount was therefore deducted by defendant, and the taxes on the remainder only claimed.

Plaintiff contended that the assessment was still further invalid to the extent of the $349,844 claimed to have been assessed on solvent credits, its claim being that no solvent credits had originally been assessed to it, and that it was only by reason of an unauthorized and void act of the assessor that it was apparently so assessed upon the roll in the hands of the tax-collector. It accordingly paid the tax of $5,702.46 on such amount, under protest, and now seeks to recover it.

The trial court found that the item of "Bonds $569,952" originally on the assessment-roll, in fact consisted of said sum of $349,844 in loans secured by stocks and bonds, assessable as solvent credits, and of $220,108 bonds of municipal corporations, and that the larger item of "Bonds $1,183,244" consisted entirely of bonds, including a duplication of the item of $220,108 municipal bonds. It further found in effect as follows, viz.: On July 11, 1899, plaintiff had been notified to appear before the board on July 14, 1899, to show cause why its assessment should not be increased. On July 13, 1899, it filed its verified petition asking for a reduction of its assessment for bonds by deducting $661,222.72. On July 14, 1899, it appeared before said board, after the changes heretofore noted had been made by the assessor, and in the presence of the board was informed by the assessor of such changes, and was requested by the assessor to examine the same and if dissatisfied therewith to suggest the correction thereof. Plaintiff thereupon stated to the board that the changes had not been authorized and were void, and asked for

the reduction of its assessment on bonds, and failed to ask for any relief in regard to the changes, although it examined the roll and saw what alterations had been made. The board did not adjourn as a board of equalization until July 17, 1899.

There is no claim that plaintiff did not own $349,844 of solvent credits, being the amount of loans secured by stocks and bonds, which were assessable as solvent credits (*Savings and Loan Soc.* v. *San Francisco,* 131 Cal. 356; *San Francisco* v. *La Société etc.,* 131 Cal. 612; *Security Sav. Bank* v. *San Francisco,* 132 Cal. 599), and the court expressly found that it did own such solvent credits. Plaintiff seeks to recover upon the ground that it was assessed in addition to its furniture, franchise, and money, only for "bonds," and not for any solvent credits. It says that there was a valid assessment only for bonds in the aggregate sum of $1,753,196, and that such assessment has never been lawfully changed and is still in force. Confessedly an assessment limited literally to bonds could be enforced only to the extent of $220,108, so that if it be determined here that it was never legally assessed for its solvent credits, it will escape payment of taxes upon $349,844, property owned by it and for which it should have been assessed.

It must of course be conceded that a valid assessment is essential to the collection of a tax. As said by Mr. Cooley, it is the most important of all proceedings in taxation, is the first step and the foundation of all others. (Cooley on Taxation, 3d ed., p. 597.) As said by this court in *Lake County* v. *Sulphur Bank etc. Co.,* 66 Cal. 17, 20, "Without an assessment, all subsequent proceedings are nullities; and in making the assessment the provisions of the statute under which it is to be made must be observed with particularity." It must further be conceded that the assessor had no power to make any change in the assessment after he delivered his roll to the board of equalization, unless such changes were authorized by the board of supervisors under sections 3679 and 3681 of the Political Code, or with the written consent of the city and county attorney under section 3881 of the same code. It is not contended that any change was made with the consent of the city and county attorney. Learned counsel for plaintiff are, however, in error in stating that there was no

issue upon the point as to whether the changes were authorized by the board of supervisors. While the allegations in the complaint upon this subject are much more specific than the denials of the answer, the defendant did deny ''that said item of solvent credits was added . . . without any authorization or direction by any board of supervisors or any board of. equalization.'' This was sufficient to put the matter of authorization in issue, and to justify the finding of the probative facts in regard thereto. If the probative facts so found compel the conclusion that the particular changes made could be and were authorized by the board of supervisors, it appears to us the plaintiff's case must fail.

Mr. Cooley says that the idea on which a suit for taxes paid is predicated is that the municipality has received that which, in justice, it ought not to retain, and that, therefore, where the proceedings have been simply irregular, the action will not lie. There must be something further. The tax must be void, a mere nullity. (Cooley on Taxation, 3d ed., p. 1493.)

It is provided by section 3885 of the Political Code that ''No assessment or act relating to assessment or collection of taxes is illegal on account of informality, nor because the same was not completed within the time required by law,'' and this section is applicable to proceedings before the board of supervisors sitting as a board of equalization. (*Buswell* v. *Board of Supervisors,* 116 Cal. 351, 353; *La Grange etc. Co.* v. *Carter,* 142 Cal. 560, 564.)

Section 3681 of the Political Code provides that the board of equalization ''may direct the assessor to assess any taxable property that has escaped assessment,'' or ''to make and enter new assessments (at the same time canceling previous entries), when any assessment made by him is deemed by the board so incomplete as to render doubtful the collection of the tax,'' the statute further providing that the clerk shall notify the · person interested by letter, at least five days before action taken, of the day fixed when the matter will be investigated, and also that the clerk of the board shall keep a record of all such changes. (See Pol. Code, sec. 3682.)

This court has said: ''Section 3681 of the Political Code simply extends the power and duty of the assessor, enabling and requiring him, at the request of the board, to list and assess property which he had failed to assess, notwithstanding

the time for assessments had passed, and the roll was no longer in his possession. And the exercise of this power is directly in accord with the policy and express provisions of the constitution, which requires all property not exempt from taxation to be taxed.'' (*Farmers etc. Bank* v. *Board of Equalization,* 97 Cal. 318, 323.)

There can be no doubt that so far as the changes made are material here,—viz., the change in the designation of the kind or quality of a portion of the personal property from ''bonds'' to ''solvent credits,'' or from a specific kind of solvent credits to the general terms including them,—they could have been made by the assessor under the direction of the board of equalization under the provisions of section 3681 of the Political Code. It is entirely immaterial in this connection whether the effect of such a change would be an ''addition'' to the assessment of property that had escaped assessment or simply a correction in the description of property already assessed, with an insufficient and incomplete description. This section would have authorized such a change in either event.

This being so, the question is as to whether the change was authorized. The presumption in cases of this character is in favor of the assessment. It was incumbent upon plaintiff to allege and prove a case showing that the acts relative to this assessment for solvent credits were unauthorized by law. (See *San Francisco* v. *Flood,* 64 Cal. 504, 508.) It was in accord with this theory that plaintiff alleged an unauthorized addition of this item of solvent credits.

We are of the opinion that the finding of the court in this regard establishes a case of a change made under the direction of the board of equalization. The procedure was somewhat informal, it may be conceded, but, as we have seen, mere informality will not invalidate. The change was made by the assessor while the roll was in the custody of the board. It was brought to the notice of the board, and the assessment, so changed, was allowed by the board to remain as the assessment against the plaintiff, notwithstanding the claim made to the board by plaintiff that the change had not been authorized. Although at the moment when actually made upon the roll, the change may not have been authorized, the board could undoubtedly subsequently authorize and require such change,

and it would be entirely unnecessary to go through the manual work of restoring the original entry and again making the same change.  And where the board acquiesced in the change under the circumstances here appearing, and allowed the assessment to stand as changed, it, in effect, directed and required such change, and what up to that moment may have been absolutely unauthorized and void became valid.

The contention that the board was without power to authorize the change in this case for want of notice to the taxpayer is not well founded.  According to the allegations of its complaint and the finding of the court, it appeared before said board in response to a citation to show cause why its assessment should not be increased; and, from the findings it appears that it was then and there informed in the presence of the board of the changes that had been made.  It did not take advantage of the opportunity afforded to urge and show that it did not own and should not be assessed for solvent credits in the amount stated, but contented itself with the claim that the change had not been authorized and was void.  The taxpayer had, however, voluntarily appeared before the board in response to a citation to show cause why its "assessment" should not be increased.  This notice implied not only that the valuation of the very property assessed might be increased, but also that the subject of taxation might be increased by the addition of other property.  (*Farmers etc. Bank* v. *Board of Equalization,* 97 Cal. 318, 325.)  By its voluntary appearance, the objection that five days' notice had not been given was waived (*Farmers etc. Bank* v. *Board of Equalization,* 97 Cal. 318, 325), and the board had jurisdiction to proceed.  The provision as to notice is designed solely to give the taxpayer an opportunity to appear and contend against any improper changes being made, and when he is in fact before the board, with full opportunity to be heard in his own behalf, the fact that notice has not been given to him by the clerk for the prescribed time, or that a notice given lacked something as to the exact details of the proposed changes, cannot affect the jurisdiction of the board.  Upon the appearance of the taxpayer here, it was informed specifically as to the proposed changes, changes entirely within the power of the board to sanction.  The only objection was, in effect, that such changes had not, as yet, been authorized.

We have fully considered the contention of defendant to the effect that certain findings are inconsistent with allegations of the complaint admitted by the answer and with certain allegations of the answer. So far as the particular matter which we have discussed is concerned, we have already indicated our opinion that the issue was made by the pleadings. The fact that the defendant had denied that any addition was made to the assessment by the change, and alleged that the plaintiff had originally been assessed for its solvent credits, did not bar it from also denying that, if any change had been made, such change had not been authorized by the board of equalization. The finding upon this issue is not inconsistent with any admission made by the pleadings. This is sufficient for the purposes of this decision, for the finding that the $349,844 solvent credits were originally included in the item of "Bonds $569,952" is not material to the judgment. The assessment of the solvent credits was a valid assessment, because made in compliance with law, under the direction of the board of equalization. We may say, however, that we do not consider the findings as to the composition of the item of "Bonds $569,952" to be without the issues. Whether or not this finding could stand in the face of the specific finding as to what the assessment was, as it originally appeared upon the roll, is another question, which also is immaterial here, in view of the conclusion we have reached upon the other branch of the case.

It may well be contended that where the description in an assessment is clear and unambiguous as to the property to be assessed, it cannot be shown by extrinsic evidence that it was intended to include other property. It has often been said that the assessment-roll, when completed and certified to the board of supervisors, is the only evidence of the acts and intentions of the assessor. (*People* v. *San Francisco Sav. Union*, 31 Cal. 132; *People etc.* v. *Stockton etc. R. R. Co.*, 49 Cal. 414; *People* v. *Hastings*, 34 Cal. 571, 574; *Allen* v. *McKay*, 139 Cal. 94, 100.)

While, too, under our statute (Pol. Code, sec. 3650, subd. 4), an assessment of personal property which did not show the number, kind, amount, and quality, would not be invalid (*San Francisco* v. *Pennie*, 93 Cal. 465, 469; *Dear* v. *Weineke*, 94 Cal. 322; *San Francisco* v. *Flood*, 64 Cal. 504; *People* v. *Mc-*

*Creery,* 34 Cal. 432, 441; Cooley on Taxation, 3d ed., 644; 27 Am. & Eng. Ency. of Law, 2d ed., 682), the statute contemplates such a showing (Pol. Code, sec. 3650, subds. 4, 10, 11), and where the assessment does show the kind of property, there is certainly room for the contention that the description thus given in pursuance of law cannot be treated as surplusage and wholly disregarded, and that the assessment thus made cannot be held to include property of a kind not suggested by the description given. But, as already said, it is not necessary here to decide these questions.

The judgment is affirmed.

Shaw, J., and Van Dyke, J., concurred.

Hearing in Bank denied.