[L. A. No. 18121. In Bank. Dec. 5, 1944.]

UNIVERSAL CONSOLIDATED OIL COMPANY (a Corporation), Respondent, v. H. L. BYRAM, as County Tax Collector, etc., Appellant.

[L. A. No. 18122. In Bank. Dec. 5, 1944.]

LONG BEACH HARBOR OIL COMPANY (a Corporation), Respondent, v. H. L. BYRAM, as County Tax Collector, etc., Appellant.

354

J. H. O'Connor, County Counsel, S. V. O. Prichard, Assistant County Counsel, and A. Curtis Smith and Gordon Boller, Deputies County Counsel, for Appellant.

Faries & McDowell, Holbrook & Tarr, C. E. McDowell and W. Sumner Holbrook, Jr., for Respondents.

CURTIS, J.—Universal Consolidated Oil Company and Long Beach Harbor Oil Company duly filed with the Board of Supervisors of the County of Los Angeles, sitting as the board of equalization for said county, applications for reduction of the valuations placed by the assessor for the year 1940-1941 upon certain of their oil leases in the Long Beach Harbor-Wilmington Field. The applications were denied by the board, and the oil companies thereupon commenced these actions to enjoin collection of the taxes and to have the court revalue the leasehold interests for assessment purposes. As the premise of their respective claims to relief, the plaintiffs charged that the particular method of assessment used in relation to their leases produced valuations which were unfair, unjust and excessive as compared with other property holdings of substantially the same character and value and similarly situated in the county, and so imposed an unequal burden upon the complainants; that the clear purport of the testimony presented at the hearing before the board established these matters as proper cases for equalization, but that the board, in its summary denial of the applications for reduction, intentionally failed and refused to consider the evidence before it and, in disregard thereof, expressly, deliberately, and wilfully withheld decision of the questions of fact in issue; and that their constitutional rights to due process and equal protection of the laws have thereby been invaded. In their individual complaints the plaintiffs also recited their tender to the tax collector, and his rejection, of certain amounts which they estimated as properly representative of the taxes due for the year in question under a fair valuation of their leases, and such sums, together with the respective balances purportedly owing upon the basis of the assessed values, were deposited in court as a condition to the issuance of temporary injunctions in restraint of the collection of the challenged taxes pending the final determination of these matters. (*County of Los Angeles* v. *Ballerino*, 99 Cal. 593, 597 [32 P. 581, 34 P. 329]; *County of Los Angeles* v. *Ransohoff*, 24 Cal.App.2d 238, 245 [74 P.2d 828].) The defendant tax collector in his respective answers denied the material charges of the complaints as to the illegality of the method of computing the taxes in question and the failure of the board to determine the points in controversy upon the merits.

The actions were consolidated for trial, and there was introduced in evidence the applications for reduced valuations as

mentioned, the reporter's transcript of the testimony at the hearing before the board, and certain exhibits there presented. In addition, further evidence was introduced, over the objection of the defendant, as to the assessor's method of assessment of the leases in question and as to the relative value of the plaintiffs' and adjacent leasehold interests. It was stipulated at the trial that it was the general method of assessment in Los Angeles County in 1940 to assess leasehold interests as here involved "at not to exceed 50 per cent of their market value." Counsel for the parties also agreed by stipulation as to the then prevailing tax rate for such property holdings. After a full hearing in these cases, the trial court found in favor of the plaintiffs on all material issues in dispute and made considerable reductions in the challenged valuations. The taxes on the leasehold interests were then computed at the stipulated rate, and the clerk of the court, from the moneys previously deposited with him by the plaintiffs, was directed to pay the amounts so calculated as a full discharge of the disputed tax claims and to refund to the plaintiffs the respective segregable balances remaining. From the separate judgments so entered in favor of the plaintiffs, the defendant has appealed. As heretofore consolidated, the cases are presented on appeal upon one record and involve identical questions.

The principal point in controversy between the parties concerns the propriety of the plaintiffs' recourse to the court for relief from the adverse determination of the county board of equalization. It must be conceded, of course, that it is well settled in this state that to the authorized county board of equalization has been confided the duty of determining "the value of the property under consideration for assessment purposes upon such basis as is used in regard to other property, so as to make all the assessments as equal and fair as is practicable"; that in discharging this duty, "the board is exercising judicial functions, and its decision as to the value of the property and the fairness of the assessment so far as amount is concerned constitutes an independent and conclusive judgment of the tribunal created by law for the determination of that question," adjudicating necessarily that "the property is assessed at the same value proportionately as all the other property in the county"; that such adjudication "cannot be avoided unless the board has pro-

ceeded arbitrarily and in willful disregard of the law intended for their guidance and control, with the evident purpose of imposing unequal burdens upon certain of the taxpayers' . . . or unless there be something equivalent to fraud in the action of the board''; and that ''Mere errors in honest judgment as to the value of the property will not obviate the binding effect of the conclusion of the board.'' (*Los Angeles etc. Co.* v. *County of Los Angeles,* 162 Cal. 164, 169-170 [121 P. 384, 9 A.L.R. 1277] ; see, also, *Southern Pac. Land Co.* v. *San Diego County,* 183 Cal. 543, 546 [191 P. 931] ; *Birch* v. *County of Orange,* 186 Cal. 736, 741 [200 P. 647] ; *Wild Goose Country Club* v. *County of Butte,* 60 Cal.App. 339, 342 [212 P. 711] ; *Merchants Trust Co.* v. *Hopkins,* 103 Cal.App. 473, 477-478 [284 P. 1072] ; *Montgomery Ward & Co.* v. *Welch,* 17 Cal.App.2d 127, 132 [61 P.2d 790] ; *Southern Cal. Tel. Co.* v. *Los Angeles County,* 45 Cal.App.2d 111, 116-117 [113 P.2d 773].) While not classifiable with any aspect of fraud or bad faith, the lack of due process distinguishing the procedural phase of these equalization matters as submitted to the board furnishes an equally appropriate basis for the court's intervention in protection of the plaintiffs' constitutional rights.

From the transcript of the proceedings before the board, which was in evidence at the trial, it appears that on July 18, 1940, testimony in these cases was presented before three members: Supervisors Jessup, Hauge and McDonough; that at the termination of the oral hearing the matters were taken under advisement; and that a final ruling on the applications was made on August 1, 1940, at a formal meeting of the board, when, in addition to the above-named members, Supervisors Ford and Smith were also present, neither of whom had attended the previous hearing nor heard the testimony. Two other applications were before the board at the same time for disposition; namely, those of Signal Oil & Gas Company, No. 268, and Long Beach Oil Development Company, No. 269. At this final meeting, when neither the complainants nor their counsel were present, the following colloquy incident to the denial of the applications in question took place:

''Chairman Jessup: Signal Oil & Gas Company, No. 268, and Long Beach Oil Development Company, No. 269. Mr. McDonough: This is a possessory interest? Mr. Ford: I was not in on this. Mr. Smith: 1-2 and 5. Mr. McDonough: This is in the same situation as Signal. Mr. Smith: Yes. Mr. Mc-

Donough: They are both alike. Mr. Smith: Signal Oil & Gas Company and the Universal Oil Company and Long Beach Oil Company. Mr. McDonough: There is a legal question involved here. Mr. Smith: I think they appeared only to protect their rights in court and made very little showing and I think we should deny it. Mr. McDonough: Well, I still think we should have an opinion of the County Counsel attached to the application for the advice of the Board and also in the event it is pursued in court. Mr. Smith: It is in court right now. Mr. McDonough: Let's set it aside for a moment. Mr. Smith: I made a statement during the hearing. . . .

"Chairman Jessup: Now, on the Signal Oil & Gas Company, No. 268, Long Beach Oil Development Company, No. 269, Universal Oil Company, No. 1020, and Long Beach Harbor Oil Company, No. 1021. Mr. McDonough: Mr. Boller [Deputy County Counsel] is here. Mr. Boller: Yes. Mr. McDonough: Now, these oil applications that we heard, they indicated that the applications show a contractor's lease with the land owners for the purpose of drilling of wells. Mr. Boller: Yes, on Signal Oil & Gas and Long Beach Oil Development Company. Mr. Smith: Universal and Long Beach Harbor Oil Company were similar. Mr. Boller: I think the two were the only ones Mr. Holmes handled. Mr. McDonough: Holmes appeared for—— Mr. Boller: For Signal Oil & Gas Company and the Long Beach Oil Development Company. Mr. Smith: Didn't you make a statement at the time of the hearing that they were here appearing in regard to protecting their rights? Mr. Boller: That was as to the Signal Oil & Gas and the Long Beach Oil Development Company only. Mr. Smith: The other two would be the same. Mr. Boller: There is no question but what that is so on the two cases Mr. Holmes presented. Mr. Smith: I move that the Long Beach Oil Development Company—— Mr. McDonough: Wait a minute, I want to ask Mr. Boller would it help the case any if it was referred to the County Counsel. Mr. Boller: No. Mr. Smith: Move that it be denied. Mr. Boller: On the Long Beach Oil Development Company the application was for cancellation and was heard in the same hearing and is to be acted upon by the Board of Supervisors. Mr. McDonough: That is another application on a case coming to us. Mr. Boller: You have answered on that. Mr. Smith: I move that the Signal Oil & Gas Company be denied. Chairman Jessup: So ordered. Mr.

Smith: I move that the Long Beach Harbor Oil Company be denied and Universal Oil Company No. 1020 be denied. Chairman Jessup: So ordered. Mr. Smith: That these four be denied. Chairman Jessup: So ordered. Mr. McDonough: *On these matters it is a legal question to be determined by the Court rather than a matter of equalization.* Mr. Boller: It is essentially so in the Signal Oil & Gas Company and the Long Beach Oil Development Company cases. It seems to me the others were factual in their showing. Mr. Smith: It is the same thing, they have a lease and are being assessed on their interests. They have a contract and are being assessed as though it were a lease. They are protecting their interest and in case the Long Beach Oil Development Company and the other one should win in court, these people are in the same position. Mr. Boller: Their agreement is not as carefully drawn up with the thought of not being taxable as a lease. Mr. Smith: Yes, the résumé they attach is exactly the same. Mr. Boller: I didn't look at them. Mr. McDonough: *The basis is the determination of a legal question rather than an appeal on a question of equalization.* Mr. Boller: It is so as to Signal and the Long Beach Oil Development Company.'' (Italics added.)

From this quoted portion of the record of the board proceedings, it is clear that two members (McDonough and Smith), one of whom had neither heard nor been advised as to the evidence adduced with regard to the two matters here in question, expressed their distinct understanding that they were passing upon four applications which presented wholly a point of law to be settled by the court rather than matters of equalization. Despite the advice of the deputy county counsel herein concerned that the plaintiffs' applications raised factual issues before the board, the said members adhered to the belief that all four oil companies were urging like objections to the assessed valuations of their respective properties and that if the complainants Signal Oil & Gas Company and Long Beach Oil Development Company should prevail in court upon the legal proposition which they advanced in their equalization hearing, the plaintiffs also would be sustained upon the same premise, which apparently rested on the claim that the particular form of contract employed would render them entirely exempt from taxation on their holdings. No such argument had ever been made by the plaintiffs;

rather, they had conceded from the outset that their leasehold interests were taxable, query simply having been raised as to the legality of the method of assessment followed in their cases. The plaintiffs had not been notified that their applications were to be considered at this final meeting, their counsel accordingly were not present, and they had no opportunity to clarify the evident confusion in the minds of the board members as to the issues involved. While three of the board members, as above noted, had heard extensive testimony as to valuation bases with respect to the plaintiffs' leases, apparently at the subsequent formal meeting of the board they did not correlate this prior hearing of factual evidence with the plaintiffs' applications. Thus, at the final meeting Supervisor Ford did not participate; Supervisors Smith and McDonough expressed their mistaken views as above recited; and Supervisors Jessup and Hauge, in failing to deny any of the incorrect statements made incident to the adverse ruling upon the plaintiffs' applications, manifestly acquiesced therein upon the same erroneous premise. Such affirmative showing in the record that the board acted without regard for the evidence before it overcomes the presumption that it performed its official duty ''to equalize the valuation of taxable property in the county.'' (*Humboldt County* v. *Dinsmore,* 75 Cal. 604, 607-608 [17 P. 710]; *Hagenmeyer* v. *Board of Equalization,* 82 Cal. 214, 218 [23 P. 14]; *Rancho Santa Margarita* v. *San Diego County,* 135 Cal.App. 134, 143 [26 P.2d 716].) ■ But even if it were reasonable to assume that the silence of Supervisors Jessup and Hauge at the final meeting on these matters did not demonstrate their acquiescence in the confused views of their associates but that, on the contrary, they, as the result of attendance at the first hearing, had the character of the plaintiffs' applications firmly in mind when they joined in the adverse decision thereon, still such determination by *two* rather than three qualified members (McDonough, Jessup and Hauge) of the tribunal authorized to equalize assessments would not satisfy the statutory requirement that at least a *majority* of the board must act upon the evidence presented. (*Bandini Estate Co.* v. *Los Angeles County,* 28 Cal.App.2d 224, 229-230 [82 P.2d 185].)

■ The fundamental premise of the plaintiffs' recourse to the court for relief rests upon the proposition that, as with

any ad valorem tax, their constitutional right to an equalization hearing comprehends a decision *in the light of the evidence there introduced* before any determination becomes final as to them. (*Bandini Estate Co.* v. *Los Angeles County, supra,* at p. BOJ; *Londoner* v. *Denver,* 210 U.S. 373, 386 [28 S.Ct. 708, 52 L.Ed. 1103].) ▮ As any tax proceeding is *in invitum* in nature, each step must be taken in compliance with law or the proceeding is void. The equalization stage is no exception to this rule. ▮ Compliance with the constitutional requirement for an equalization hearing is not met unless the substance as well as the form of the hearing is granted to the complaining taxpayer. (*Bandini Estate Co.* v. *Los Angeles County, supra,* at p. 227.) Typical illustrations of the denial of procedural due process which have been held to invalidate purported equalization determinations are: One man hearings (*Bandini Estate Co.* v. *Los Angeles County, supra,* at pp. 228-230) ; the taking of evidence without the presence of the taxpayer or his representative (*Carstens* v. *Pillsbury,* 172 Cal. 572, 577 [158 P. 218] ; *Bandini Estate Co.* v. *Los Angeles County, supra,* at p. 231) ; the refusal to allow reasonable opportunity for cross-examination (*Interstate Commerce Com.* v. *Louisville & Nash. R. R.,* 227 U.S. 88, 93 [33 S.Ct. 185, 57 L.Ed. 431]) ; the refusal to permit reasonable argument (*Londoner* v. *Denver,* 210 U.S. 373, 386 [28 S.Ct. 708, 52 L.Ed. 1103]) ; reliance in the concluding steps upon the advice of the assessor or the assessor's attorney, particularly if done secretly (*Morgan* v. *United States,* 304 U.S. 1, 19-20 [58 S.Ct. 773, 82 L.Ed. 1129]) ; and the attempted determination of a case by members of the board who did not hear the evidence, if their vote be necessary to the determination (*Hawkins* v. *Gd. Rapids Common Council,* 192 Mich. 276, 291-292 [158 N.W. 953, Ann.Cas.1917E 700]).

▮ In line with these instances of the denial of procedural due process are the present cases. The *concluding steps* of the equalization proceeding are many times the most essential to the preservation of the taxpayer's rights. Thus, in *Morgan* v. *United States, supra,* it is pertinently said in this regard (304 U.S. 20): "The requirements of fairness are not exhausted in the taking or consideration of evidence but extend to the *concluding parts* of the procedure as well as to the beginning and intermediate steps." (Italics added.) Adverting to the above recited conduct of the board at its final meeting with respect to the plaintiffs' applications, it is

plain that there was *no adjudication as to the facts in issue* and no consideration of the evidence or the merits of the objections raised. The decision of the board was simply that it had nothing to decide, and it accordingly failed to function as an equalization tribunal. In the light of its mistaken understanding as to the factual background of the applications before it for appropriate disposition, the consequences of the board's omission to act upon the evidence presented were just as disastrous to the plaintiffs' cases as would have been the board's refusal to take jurisdiction of the proceedings or to accord the plaintiffs a hearing.

But the mistake of the board in the respect noted does not sanction the court's undertaking to resolve the conflicting issues of fact bearing upon the taxable value of the plaintiffs' leasehold interests. ▇ As appears from the numerous authorities cited in the forepart of this opinion, the respective county board of equalization is the fact-finding body designated by law to remedy excessive assessments (Cal. Const., art. XIII, § 9), and when that tribunal, after due hearing and within the limits of reasonable discretion, makes its *findings on the facts,* such decision is final and conclusive. The present cases involve a dispute as to the proper method of assessment of plaintiffs' property interests, there was a conflict in the evidence on that issue as presented to the board, and that tribunal should decide the merits or demerits of the complaint before it. It is essential to the performance of governmental functions that an orderly system of assessment and collection of taxes shall be maintained, and that the amounts of the assessments be fixed with certainty in a prescribed manner. The prevailing statutory scheme in this state on equalization matters provides for a method of reviewing the values fixed by the assessor and a tribunal to pass upon any claims of overvaluation. (Rev. & Tax. Code, § 1601 et seq.) ▇ While considerations of procedural due process here nullify the force of the authorized tribunal's ruling and sustain its avoidance by the court in response to the plaintiffs' applications for relief therefrom, the intent of the law governing equalization proceedings would require that these cases be remanded to the board for completion upon the basis of the evidence submitted at the hearing before it. ▇ True, the life of a board of equalization is limited by statute (Rev. & Tax. Code, § 1603), but that provision is directory only

and does not deflect from the statutory scheme that the authorized tribunal pass upon matters properly within its jurisdiction though in the *completion* of its work it must act at a time beyond the prescribed period. (*Buswell* v. *Board of Supervisors of Alameda County,* 116 Cal. 351, 354 [48 P. 226]; *Whiting Finance Co.* v. *Hopkins,* 199 Cal. 428, 436 [249 P. 853].) While in the case of *Bandini Estate Co.* v. *Los Angeles County, supra,* upon establishment of the invalidity of the equalization proceeding by reason of defects in the composition of the board and in the conduct of the hearing amounting to a lack of procedural due process, ''it [was] ordered that the judgment [against the taxpayer] be reversed, and the cause remanded to the trial court to ascertain the proper values of the various parcels in question, and determine the amount of the taxes due thereon'' (28 Cal.App. 2d 232), it does not appear from the opinion, with but such passing treatment of the point, that the question of the proper tribunal to which valuation issues for purposes of assessment should first be submitted was there raised or received considered judgment. Insofar as the quoted language is contrary to the views herein expressed, it must be disapproved.

The foregoing discussion renders it unnecessary to consider other propositions presented on these appeals relative to the conduct of the trial incident to the court's determination of the merits of plaintiffs' equalization claims.

The judgment is reversed with directions to the trial court to remand these matters to the Los Angeles County Board of Equalization for further consideration and action in accordance with due process of law. It is also ordered that the money placed on deposit herein by the plaintiffs as representative of their tax liability under the assessed valuations of their property interests and as a condition of their application for equitable relief, be retained by the court pending the determination of these equalization matters by the board. While on this point the present cases present a peculiar question of procedure, ''There is nothing particularly unusual or contrary to good practice for the court in the exercise of its equity powers to retain jurisdiction of the parties and the subject matter of the action, when the circumstances of the case warrant the same, until the appropriate remedy may be finally accorded by the judgment in the action'' (*Murphy* v. *Bucke's Department Store,* 199 Cal. 194, 198 [248 P. 668]),

and upon analogous reasoning a like principle should prevail here to assure justice to all parties concerned. Accordingly, the final disposition of these cases must await the board's ruling on the merits of the plaintiffs' claims and the court's disbursement of the fund on deposit herein in conformity with the terms thereof.

Shenk, J., Schauer, J., Edmonds, J., concurred. Carter, J., concurred in the judgment of reversal.

TRAYNOR, J., Concurring and Dissenting.—I concur in the first six paragraphs of the majority opinion and in the conclusion that a taxpayer has no right to a trial de novo in the superior court to resolve the conflicting issues of fact as to the taxable value of his property. In my opinion, however, the record of the board of equalization proceedings discloses nothing to indicate that plaintiffs were denied due process of law.

In their complaint to the county board of equalization plaintiffs contended that the assessments of their properties were excessive because the assessor had used a discriminatory method of determining value. On July 18, 1940, they had a hearing before three members of the board of equalization. Their expert testified that the assessed value should have been arrived at by a volumetric method applied on an acreage basis. The assessor's method was based on production value of existing wells, which was explained by his oil valuation engineer. The board of equalization accepted the latter's testimony and denied relief to plaintiffs. Constructive fraud cannot be predicated on that acceptance. (*Los Angeles etc. Co.* v. *County of Los Angeles,* 162 Cal. 164, 169-170 [121 P. 384, 9 A.L.R. 1277]; *Birch* v. *County of Orange,* 186 Cal. 736, 741 [200 P. 647].)

The majority opinion is based, not on what occurred at the hearing on July 18th, but on what occurred when the matters came up for decision at the formal meeting of the board of August 1, 1940. Equalization matters in Los Angeles County are customarily heard by three board members, different groups of three sitting on different days. Many cases are taken under submission and called up for decision when all five members of the board are present so that all submitted matters ready for decision can be passed upon at one time. If a fourth or fifth member should vote upon an application

that he did not hear, his vote must be disregarded, but that would not invalidate the proceeding. The transcript of the board proceedings shows that when the two applications in these cases were called up for decision, there were two other applications involving other oil properties heard by different board members, one of whom was Supervisor Smith. The record discloses that he made no remarks designed to influence the three board members who heard the evidence in the present cases and voted to deny the applications.

There was nothing improper in the attendance at the board meeting of the deputy county counsel who represented the assessor. The record discloses that he did nothing to influence the vote of any member of the board.

There is no merit in the contention that the board intentionally withheld any judgment for the purpose of submitting the matter later in court. According to the record Supervisor McDonough was simply not convinced that plaintiff's property had been improperly assessed and was of the opinion that whatever remedy the taxpayer might have must be through the courts. Even if his reasoning was erroneous, and the decision in which he joined was based on it, the decision would not violate due process any more than would an erroneous judgment of any court. (*Gray* v. *Hall*, 203 Cal. 306, 317 [265 P. 246]; *Patterson* v. *Colorado*, 205 U.S. 454, 461 [27 S.Ct. 556, 51 L.Ed. 879]; *Abbott* v. *National Bank of Commerce*, 175 U.S. 409, 414 [20 S.Ct. 153, 44 L.Ed. 217]; *Jones* v. *Buffalo Creek etc. Co.*, 245 U.S. 328, 329 [38 S.Ct. 121, 62 L.Ed. 325]; *Central Land Co.* v. *Laidley*, 159 U.S. 103, 110, 112 [16 S.Ct. 80, 40 L.Ed. 91]; *Worcester County Trust Co.* v. *Riley*, 302 U.S. 292, 299 [58 S.Ct. 185, 82 L.Ed. 268].)

The majority opinion declares that ''while three of the board members, as above noted, had heard extensive testimony as to the valuation bases with respect to plaintiffs' leases, they did not correlate this prior hearing of factual evidence with plaintiffs' applications.'' There is nothing in the record to indicate that the three members who heard the evidence did not correlate it with the plaintiffs' applications. Having no special insight into the mental processes of the board members this court cannot determine that they failed to correlate plaintiffs' applications and the evidence heard in the previous hearing. Indeed, the presumption is that they did. (*Utah Construction Co.* v. *Richardson*, 187 Cal. 649, 654 [203 P. 401];

*Savings & Loan Soc.* v. *San Francisco,* 146 Cal. 673, 678 [80 P. 1086]; *Hannon* v. *Madden,* 214 Cal. 251, 267 [5 P.2d 4]; *Wild Goose Country Club* v. *County of Butte,* 60 Cal.App. 339, 342 [212 P. 711]; *Merchants Trust Co.* v. *Hopkins,* 103 Cal.App. 473, 478 [284 P. 1072]; *Great Northern R. R. Co.* v. *Weeks,* 297 U.S. 135 [56 S.Ct. 426, 80 L.Ed. 532, 536].) It must therefore be concluded that the evidence failed to convince them that the assessments were improper. There is no requirement that the board members give written opinions in the cases before them or set forth orally the mental processes that prompted their conclusions. Indeed, there can be no inquiry into those processes to impeach their decision. (*Chicago B. & O. Ry. Co.* v. *Babcock,* 204 U.S. 585, 593 [27 S.Ct. 326, 51 L.Ed. 636].) Nor can their written or oral expression of opinion be used for that purpose. ''To hold that oral or written opinions or expressions of judges of trial courts may be resorted to to overturn judgments would be to open the door to mischievous and vexatious practices.'' (*De Cou* v. *Howell,* 190 Cal. 741, 751 [214 P. 444].)

Moreover, the decision of the board was made by three members. Only one member's expression of opinion is attacked. There is nothing in the record to indicate that the majority shared his view. The prevailing opinion states that ''Supervisors Jessup and Hauge, in failing to deny any of the incorrect statements made incident to the adverse ruling upon the plaintiffs' applications, manifestly acquiesced therein upon the same erroneous premise.'' Supervisor McDonough was speaking for himself, and his statement was no more binding on the other members of the board than statements from the bench by one member of this court would be on the other members, in ruling on motions or during oral arguments. Each member may have his own reasons for his vote and may not only disagree with the statements of the others but interpret them differently. Otherwise members of any judicial body would be constrained to deny all statements of their colleagues with which they disagreed, and the consequence would be interminable hearings.

There is no question in this case that plaintiffs had a fair hearing before an appropriate tribunal, as required by the due process clause. None of the charges is sufficient ground to set aside a judgment of a superior court or any other court. There is no reason why they should suffice to set aside the

decision of a quasi judicial body like the local board in this case. (See *Laisne* v. *California State Board of Optometry,* 19 Cal.2d 831 [123 P.2d 457].)

CARTER, J., Concurring and Dissenting.—I concur in the judgment of reversal but there is much in the majority opinion with which I do not agree. In my opinion the plaintiffs have not pursued the proper remedy to obtain the relief which they are seeking, assuming that they are entitled to such relief. The proper remedy for a taxpayer to pursue where he asserts that there has been a gross and discriminatory overvaluation of his property after seeking relief from the board of supervisors sitting as a board of equalization, or where he claims that he has been denied procedural due process of law by the board, as in the instant case, is to apply for certiorari to the superior court to review the board's action. As stated in the majority opinion the board is a local one exercising judicial functions and therefore its action should be subject to review the same as other local boards or commissions exercising judicial functions. The appropriate remedy to question the action of such boards is certiorari. (See *Bayside Land Co.* v. *Dolley,* 103 Cal.App. 253 [284 P. 479]; *Huntley* v. *Board of Trustees,* 165 Cal. 298 [131 P. 859]; *Birch* v. *Board of Supervisors,* 191 Cal. 235 [215 P. 903]; *Imperial Water Co. No. 1* v. *Board of Supervisors,* 162 Cal. 14 [120 P. 780]; *Miller & Lux* v. *Board of Supervisors,* 189 Cal. 254 [208 P. 304]; *Drummey* v. *State Board of Funeral Directors & Embalmers,* 13 Cal.2d 75 [87 P.2d 848]; *Standard Oil Co.* v. *State Board of Equalization,* 6 Cal.2d 557 [59 P.2d 119]; *Laisne* v. *State Bd. of Optometry,* 19 Cal.2d 831 [123 P.2d 457].) There is nothing in *Merchants Trust Co.* v. *Hopkins,* 103 Cal.App. 473 [284 P. 1072], *County of Los Angeles* v. *Ballerino,* 99 Cal. 593 [32 P. 581, 34 P. 329], or *County of Los Angeles* v. *Ransohoff,* 24 Cal. App.2d 238 [74 P.2d 828], contrary to the propriety of certiorari in such cases. In the Hopkins case it was merely assumed without discussion that an action for an injunction was the proper remedy. In the other two cases the court merely held that the assessment could be questioned by way of defense to an action by the county for the taxes. In *Pacific Postal etc. Cable Co.* v. *Dalton,* 119 Cal. 604 [51 P. 1072], the court was really concerned with whether or not the complaint stated sufficient facts and not whether injunction was a proper remedy. By way of dictum it quotes from *County of Los Angeles* v. *Balle-*

*rino, supra,* which was also dictum. In *Wells, Fargo & Co.*
v. *State Board of Equalization,* 56 Cal. 194, the statement
was made in the concurring opinion and even so was dictum
inasmuch as the proceeding was for prohibition.

In *Las Animas etc. Land Co.* v. *Preciado,* 167 Cal. 580 [140
P. 239], the court was concerned with a wholly unauthorized
tax and not a review of the decision of the board of equaliza-
tion. The same is true of *Esterbrook* v. *O'Brien,* 98 Cal. 671,
673, [33 P. 765], where the court brings out the distinction
in the character of the relief sought. The court said:

"Courts of equity *do not review the proceedings of officers
entrusted with the assessment of property.* If proceedings
taken by them are void, no title will pass by a sale of the real
estate, and the party claiming to be injured must litigate his
rights in an action at law for the possession of the premises.
Of course there are exceptions to the rule, as where it is shown
that the lands are *not at all subject to taxation, or that there
is no law authorizing any proceedings therefor,* but that is not
the case here." (Italics added.)

In *Crocker* v. *Scott,* 149 Cal. 575 [87 P. 102] ; *Bradford* v.
*San Francisco,* 112 Cal. 537 [44 P. 912], *Central Pac. R. R.
Co.* v. *Corcoran,* 48 Cal. 65; *Savings & Loan Soc.* v. *Austin,*
46 Cal. 415, and like cases the court was only concerned with
whether there was an adequate legal remedy. Certiorari was
not discussed.

To the end that some order and clarity be preserved in the
field of judicial review of judicial action by a local adminis-
trative agency, it is suggested that certiorari be accepted as
the proper remedy.

Where taxes become delinquent during the pendency of the
proceeding for review or after or during a further considera-
tion by the board after remand, the taxpayer must pay the
taxes levied under protest and await the outcome of the pro-
ceedings to recover a refund if any. That is in furtherance
of the policy that the public should not be deprived of the
revenue necessary to perform the governmental functions.
Such policy is indicated in sections 5136 to 5143 of the Reve-
nue & Taxation Code.

But passing the procedural question it seems clear to me
that under well settled rules of law, plaintiffs have not made
out a case entitling them to relief in these actions.

It is not questioned in these cases that the taxpayers had

proper notice and a hearing before the board of equalization on their application to have the assessed value of their property reduced. Both they and the county assessor produced evidence and the *sole* issue involved was whether or not the valuation method adopted and used by the assessor was proper. It is not claimed that the board was guilty of actual fraud. The judgment of the board on conflicting evidence is final and may not be upset by a court. It is said in 24 California Jurisprudence 243:

"In the absence of fraud or malicious abuse of its powers, a board of equalization is the sole judge of questions of fact and of the value of property, and its determination—based on evidence—with reference to all matters within its jurisdiction is conclusive, and is not subject to collateral attack. Thus a decision, based on evidence, as to the value of property and the fairness of an assessment so far as amount is concerned, or a decision raising an assessment or that property has escaped assessment, is conclusive in the absence of fraud, regardless of errors committed in the assessment. The fact recited in the order that evidence was taken forecloses discussion as to the sufficiency of the evidence. Indeed, when the record does not show affirmatively that the board did not act upon evidence before it, its order is conclusive that it did so act." There is no showing that there was constructive fraud. The majority opinion implicitly admits that. No showing of discrimination in respect to other property was made, the sole issue being the correctness of the method adopted by the assessor for valuing the property. Hence, the only point made is that procedural due process was denied. The majority opinion is predicated on the occurrences that transpired *after* the hearing and when the matter came up for decision by the board. At the original hearing there were present three of the five members of the board; Jessup, McDonough and Hauge. After evidence was introduced, the matter was submitted to the board for decision. Thereafter it came up for decision before the full board, the other two members, Ford and Smith being present, and it is solely by reason of the matters that there transpired from which it is determined that procedural due process was denied. At that time four cases were considered, the two involved in the instant action and two others. The deputy county counsel was present and stated as to the two others that a legal question was involved.

*He made no comment whatsoever concerning the two instant cases.* The only statement made to the contrary was by board member Smith who said: ''The other two (the cases here involved) would be the same.'' To which the deputy county counsel stated: ''There is no question but what that is so on the two cases (not here involved) Mr. Holmes presented.'' The applications in all four cases were then denied unanimously. It was not until *after* that denial that member McDonough remarked: ''On these matters it is a legal question to be determined by the court rather than a matter of equalization,'' and the following occurred: ''MR. BOLLER: It is essentially so in the Signal Oil & Gas Company and the Long Beach Oil Development Company cases. It seems to me the others were factual in their showing. MR. SMITH: It is the same thing, they have a lease and are being assessed on their interests. They have a contract and are being assessed as though it were a lease. They are protecting their interest and in case the Long Beach Oil Development Company and the other one should win in court, these people are in the same position. MR. BOLLER: Their agreement is not as carefully drawn up with the thought of not being taxable as a lease. MR. SMITH: Yes, the résumé they attach is exactly the same. MR. BOLLER: I didn't look at them. MR. McDONOUGH: The basis is the determination of a legal question rather than an appeal on a question of equalization. MR. BOLLER: It is so as to Signal and the Long Beach Oil Development Company.'' Assuming that the foregoing language is susceptible of the construction that no decision on the *facts* of the case was made by the board and ignoring the circumstance that the remarks were made after the decision, it is also susceptible of the interpretation that reference was made only to the two cases not here involved. Moreover, it was merely an expression of one of the members of the board. To conclude that such vague and indefinite language was sufficient to impeach the integrity of the board to the point that due process of law was lacking is to disregard all presumptions and render every decision by a board of equalization subject to attack upon the slightest provocation. It is the declared statutory law of this state that public officers are presumed to have regularly and properly performed their duties. (Code Civ. Proc., § 1963(15).) The most that may be said here is that the language used by the board members was susceptible of two

constructions, that is, the board had not made an adjudication on the facts or that it had ignored the facts and passed the matter on to the courts on a question of law. Under those circumstances the presumption is particularly applicable. In *Chicago, B. & Q. Ry. Co.* v. *Babcock*, 204 U.S. 585, 593 [27 S.Ct. 326, 51 L.Ed. 636], the court in refusing to annul an order fixing the assessed valuation of property by a state board of equalization, stated:

''When we turn to the evidence there is equal ground for criticism. The members of the Board were called, including the Governor of the State, and submitted to an elaborate cross-examination with regard to the operation of their minds in valuing and taxing the roads. This was wholly improper. In this respect the case does not differ from that of a jury or an umpire, if we assume that the members of the Board were not entitled to the possibly higher immunities of a judge. (*Duke of Buccleuch* v. *Metropolitan Board of Works*, L.R. 5 H.L. 418, 433.) Jurymen cannot be called, even on a motion for a new trial in the same case, to testify to the motives and influences that led to their verdict. *Mattox* v. *United States*, 146 U.S. 140 [13 S.Ct. 50, 36 L.Ed. 917]. So, as to arbitrators. *Duke of Buccleuch* v. *Metropolitan Board of Works*, L.R. 5 H.L. 418, 457, 462. Similar reasoning was applied to a judge in *Fayerweather* v. *Ritch*, 195 U.S. 276, 306, 307 [25 S.Ct. 58, 49 L.Ed. 193]. A multitude of cases will be found collected in 4 Wigmore, Evidence, §§ 2348, 2349. All the often repeated reasons for the rule as to jurymen apply with redoubled force to the attempt, by exhibiting on cross-examination the confusion of the members' minds, to attack in another proceeding the judgment of a lay tribunal, which is intended, so far as may be, to be final, notwithstanding mistakes of fact or law. See *Coulter* v. *Louisville & Nashville R. R. Co.*, 196 U.S. 599, 610 [25 S.Ct. 342, 49 L.Ed. 615]; *Central Pacific R. R. Co.* v. *California*, 162 U.S. 91, 107, 108, 117 [16 S.Ct. 766, 40 L.Ed. 903]; S. C., 105 California, 576, 594; *State Railroad Tax* cases, 92 U.S. 575 [23 L.Ed. 663]; *Cleveland, Cincinnati, Chicago & St. Louis Ry. Co.* v. *Backus*, 133 Ind. 513, 542 [33 N.E. 421, 18 A.L.R. 729]. In *Fargo* v. *Hart*, 193 U.S. 490, 496, 497 [24 S.Ct. 498, 48 L.Ed. 761], there was no serious dispute as to what was the principle adopted. . . . Exactly what weighed in each mind, and even what elements they purported to consider in their debates, is little more than a guess. . . . Evidently also the members

or some of them used their own judgment and their own knowledge, of which they could give no very good account on cross-examination, but which they had a right to use, if honest, however inarticulate the premises. It would seem from the testimony, as might have been expected, that the valuations fixed were a compromise and were believed by some members to be too low, as they seemed to one too high. It is argued to us, on expert testimony, that they are too low. The result of the evidence manifests the *fruitlessness of inquiries, which, as we have said, should not have been gone into at all."* (Italics added.)

In fixing the valuation of the property in this case the trial court disregarded the rule that in the absence of statute a court has no authority to substitute its judgment for that of the board of equalization in a matter within the jurisdiction of the board. (See *Federal Power Commission* v. *Pacific Power & L. Co.,* 307 U.S. 156 [59 S.Ct. 766, 83 L.Ed. 1180]; *Central Kentucky Natural Gas Co.* v. *Railroad Commission,* 290 U.S. 264 [54 S.Ct. 154, 78 L.Ed. 307]; *Reagan* v. *Farmers Loan & T. Co.,* 154 U.S. 362 [14 S.Ct. 1047, 38 S.Ct. 1014].) The county tax assessor has exclusive jurisdiction to fix the value of property for assessment purposes, subject to the exclusive power of the board of supervisors sitting as a board of equalization to equalize the assessment. (Cal. Const., art. XIII, § 9; Rev. & Tax. Code, § 601 et seq., § 1601 et seq.; *La Grange etc. Co.* v. *Carter,* 142 Cal. 560, 565 [76 P. 241]; *Los Angeles Gas & Elec. Co.* v. *County of Los Angeles,* 162 Cal. 164 [121 P. 384].)

On the main issue, that is, whether the assessment was so out of line that the refusal to reduce it was equivalent to fraud, consideration should first be given to what the powers of the board of equalization are in this respect. We have heretofore seen that finality is accorded its determination. It cannot be doubted that a taxpayer must first resort to the board of equalization when he complains that an assessment is excessive. The only grounds, other than procedural due process, upon which the board's decision may be questioned are actual fraud or that which is equivalent to fraud or constructive fraud. The later ground usually consists of a gross over-valuation resulting in a discrimination as between the taxpayer involved and others similarly situated. But all of those matters must be brought before the board of equaliza-

tion, and if not presented, will not be considered by a reviewing court. In the instant case, assuming that a determination by the board of equalization may be set aside where the valuation is so grossly excessive as compared to other property as to be equivalent of fraud, because the board has exceeded its statutory authority, or failed to perform its duty, still the court on review is confined to the evidence before the board and if there is a conflict therein the court is bound by the board's decision. While a trial de novo, with some procedural limitations (*Dare* v. *Board of Medical Examiners*, 21 Cal.2d 790 [136 P.2d 304]), is appropriate in reviewing the action of a statewide agency, it is not available in the review of a local board exercising judicial functions. (*Laisne* v. *State Board of Optometry*, 19 Cal.2d 831 [123 P.2d 457].) The valuation is first made by the county assessor and the board of equalization sits as a reviewing board of his determination. (*Los Angeles Gas & Elec. Co.* v. *County of Los Angeles*, 162 Cal. 164 [121 P. 384].) Where the claim of the taxpayer is, as it is here, that the valuation was grossly out of line with that of similar properties, as distinguished from situations where the charge of fraud consists of matters outside the record, we have a matter squarely within the board's jurisdiction and upon which the board should pass. The taxpayer should therefore present any evidence he has to the board, and only in the event that upon that evidence alone the only reasonable conclusion is that the board was motivated by actual or constructive fraud in arriving at the valuation, may the court disturb the board's conclusion. That the taxpayer must present, his claim of over-valuation and discrimination to the board and that on review the court may examine only the evidence before the board is clearly indicated in *Hammond L. Co.* v. *County of Los Angeles*, 104 Cal.App. 235, 241 [285 P. 896], where it is said:

"In case a taxpayer feels aggrieved by reason of the assessor's valuation, the law provides for a determination of the facts by a tribunal sitting as a county board of equalization. When the assessment is not *wholly void*, it is to this tribunal that the taxpayer must first apply for relief, and the decision of the board, made after due hearing and within the limits of reasonable discretion, is final and conclusive. (*La Grange Co.* v. *Carter*, 142 Cal. 560, 565 [76 P. 241]; *California Domestic Water Co.* v. *County of Los Angeles*, 10 Cal.App. 185, 191 [101 P. 547]; *Pierce* v. *County of Santa Barbara*,

40 Cal.App. 302, 304 [180 P. 641]; *Globe G. & M. Co.* v. *County of Los Angeles,* 62 Cal.App. 297, 299 [216 P. 631].)

"The decision of the board constitutes an independent and conclusive judgment which abrogates and takes the place of the judgment of the assessor, and even though there be mistake or error, the decision of the board will not be rejected upon review by the court, unless there is proof of actual fraud, or such arbitrary, unreasonable or grossly oppressive action, in wilful disregard of the law, as amounts to constructive fraud. . . .

"Plaintiff followed the requisite procedure in applying to the board of equalization for reduction of the assessor's valuation, but met with no success. No charge is made of any actual fraud or malicious abuse of power on the part of either the assessor or the board of equalization, but it is earnestly contended that the assessment is so grossly excessive and discriminatory as constructively to constitute fraud. *The assessment not being wholly void, this action, though cast in the form of an action to recover a tax paid under protest, is properly a proceeding to review the decision of the board of equalization. The function of the trial court, therefore, was to determine whether a correct method of valuing the usufructuary interest was pursued, and whether there was substantial evidence before the board in justification of the assessment made.*" (Italics added.) And again at page 246:

"In the proceeding before the board the burden of proof was on the plaintiff, and the decision of the board upon the evidence adduced *cannot be collaterally assailed by new evidence on the point in a different tribunal.* (*Wild Goose Country Club* v. *County of Butte,* 60 Cal.App. 339, 341 [212 P. 711].)

"What has just been said applies with *equal force* to the contention that there was such *gross inequality and arbitrary discrimination as to invalidate the assessment.* At the hearing before the board it was admitted by the assessor that leasehold interests in land held in private ownership were not separately assessed, a single assessment in such case being made of the freehold with all lesser interests." (Italics added.)

In my opinion the judgments should be reversed with direction to the trial court to dismiss the actions.

Respondents' petition for a rehearing was denied December 28, 1944. Carter, J., and Schauer, J., voted for a rehearing.