[Civ. No. 26797.   First Dist., Div. Three.   July 8, 1969.]

JONES LUMBER CORPORATION, Petitioner, v. FRANK J. BRICKWEDEL, as County Assessor, etc., et al., Respondents.

Hill & Neville, Robert W. Hill, Cake, Jaureguy, Hardy, Buttler & McEwen, Robert L. Weiss and Nick I. Goyak for Petitioner.

William W. Speer, County Counsel, for Respondents.

Thomas C. Lynch, Attorney General, Ernest P. Goodman, Assistant Attorney General, and Walter J. Wiesner, Deputy Attorney General, as Amici Curiae for Respondents.

DRAPER, P. J.—Two years ago, we held the 1963-64 assessment of timberlands in Del Norte County to be unconstitutionally discriminatory (*Jones Lbr. Co.* v. *Del Norte County*, 251 Cal.App.2d 645 [59 Cal.Rptr. 644]). Hearing was denied by our Supreme Court, and certiorari was denied (389 U.S. 1015 [19 L.Ed.2d 661, 88 S.Ct. 591]). The assessor had appraised all old growth timber in the county at the same market price. In fixing assessed values, however, he had applied a sliding scale of discounts based solely on the quantity of timber owned by each taxpayer. The obvious result was to assess at different rates properties which had been appraised at identical values, and was clearly discriminatory.

On this petition for writ of mandate, we must determine whether the same practice is being followed in the 1969-70 assessments. We issued alternative writ.

Since our earlier decision, the State Board of Equalization has adopted a regulation governing valuation of timber (Cal. Admin. Code, tit. 18, rule 41). This rule recognizes a distinction between "immediate harvest value" and "market value." The former is the price a willing and informed buyer would pay a like seller "for timber to be harvested in the immediate future." It is to be determined by considering "all elements of value, such as species, quality, accessibility, terrain, logging conditions, and distance from market." But this figure is to be synonomous with market value "only if all of the presently merchantable timber included in the unit may reasonably be expected to be harvested within the immediate future." In converting immediate harvest value to market value "consideration shall be given to all economic factors which relate to operating a stand of timber," including the "length of time over which the timber in the unit may reasonably be expected to be harvested. . . ." In using comparable sales as a basis for appraisal, the assessor shall consider probable harvest periods. He may also, upon his estimate of probable harvest life, capitalize net periodic income.

We find no objection to rule 41 as such. Admittedly, it considers the quantity of timber owned by the particular taxpayer, but it specifically makes this only one of many factors to be weighed. An analysis by the state board's timber appraisal staff shows that sales of large blocks of standing

timber have often been at a lower rate per thousand board feet than sales of smaller blocks. Since market value is the base for determining assessed value, such sales may be considered with other facts which bear upon comparability of sales.

The question before us is whether the assessor, for his 1969-70 assessment roll, is really following the state board's rule or is, as petitioner suggests, still looking only to volume of ownership, as he did in the 1963-64 assessment.

We must determine this issue upon the only record before us, the transcript of the proceedings before the board of supervisors sitting as a board of equalization. (That proceeding dealt with the 1968-69 assessment, but concededly states the assessor's procedure as to his 1969-70 assessment as well.) The assessor, in testifying before that body, did not indicate a facile recognition of the many factors, other than size of ownership, which bear upon true market value. He did, however, insist that he had carefully followed the state board's rule. He also referred to additional studies and appraisals in his immediate area by the state board's timber appraisal staff. They were not produced, nor were they asked for by petitioner. The assessor did, however, testify that they support his valuations. Thus his testimony cannot be fairly construed as establishing that his appraisal differentials were based upon mere size of holdings.

It is true that he now assesses the property of the largest timber owner at the lowest valuation per thousand board feet, that of the second largest owner at a somewhat higher rate, and that of petitioner, the third largest owner, at a still higher rate per thousand board feet of timber owned. In this sense, the assessment is comparable to that condemned by us in the earlier *Jones* case. But there is evidence of the assessor's consideration of relevant factors other than size which affect the market value and probable cutting life of a stand of timber.

His assessment was confirmed, although by but a three to two vote, when the county board of equalization rejected petitioner's protest. This determination must be given due weight by the courts (see cases cited in *Universal Consol. Oil Co.* v. *Byram*, 25 Cal.2d 353, 356-357 [153 P.2d 746]), and will be set aside only upon a showing that the board acted arbitrarily.

Such showing is not made by the record before us. It may leave room for the feeling that fuller development of the procedures of the assessor would show that in fact he considered only the size of individual ownerships, or that the state board

in developing the data on which the assessor relies looked to size alone and ignored other market factors which might show the sales upon which it is based not to be truly comparable. But to assume these possible developments would be but speculation.

Peremptory writ denied. Alternative writ discharged.

Brown (H. C.), J., and Caldecott, J., concurred.

A petition for a rehearing was denied August 7, 1969.